# THE PRESIDENT AND BOARD OF TRUSTEES
# OF THE TOWN OF MT. CARMEL

## *v.*

# THE COUNTY OF WABASH.

1. LICENSES—*power of the Trustees of Mt. Carmel in respect thereto.* Under the act of 1835, incorporating the town of Mt. Carmel, the power was conferred upon the municipal authorities to grant licenses to groceries.

2. But, if that were not so, that power was conferred by the act of 1845, entitled "Licenses,"—which, in giving to incorporated towns the exclusive privilege of granting licenses to groceries, has reference as well to towns acting under special charters, as to those organized under the general law.

3. MONEY ARISING FROM LICENSES—*to whom it belongs.* Since the act of February 10, 1849, in relation to the incorporation of towns and cities, all such municipal corporations have the right to retain and appropriate to their own purposes, all moneys arising from the granting of licenses to sell liquor, and it is no longer required to be paid into the county treasury, as provided by the 14th section of the chapter of the revised statutes, entitled "Licenses."

4. POWER TO GRANT LICENSES—*by what words conferred.* The power given to a municipal corporation either to "tax" or to "restrain" the sale of liquor, includes the power to grant licenses therefor.

5. VESTED RIGHTS—*municipal corporations—of their grants of power.* The powers granted to municipal corporations, are not vested rights, but are wholly under the law making power of the State, and their charters may be amended, changed or repealed, at the legislative will.

WRIT OF ERROR to the Circuit Court of Wabash county; the Hon. S. S. MARSHALL, Judge, presiding.

The facts in this case are fully presented in the opinion.

Messrs. BELL & GREEN, for the plaintiffs in error.

Messrs. TANNER & CASEY, for the defendant in error.

Mr. Justice Walker delivered the opinion of the Court:

This was an action of assumpsit, brought by Wabash county, in the circuit court, against the Trustees of the Town of Mt. Carmel, to recover moneys received by them for licenses which they had granted to various persons to sell spirituous liquors. A trial was had by the court, the parties having waived a jury by consent. The court below found the issues in favor of the county, and rendered a judgment against the trustees for $412, and the costs ; and to reverse that judgment this writ of error is prosecuted, and errors assigned upon the record.

We find in the record this stipulation :

"It is hereby agreed by the parties to this suit, that the facts proven upon the trial are as follows, that is to say : The defendants, under and by virtue of the sixth section of an 'Act to Incorporate Mount Carmel, in Wabash county,' approved January 31, 1835, and ordinances passed in pursuance thereof, and for the purposes in said section specified, issued licenses to divers persons in said town to keep groceries for the sale of spirituous liquors by a less quantity than one gallon ; for which licenses the defendants received before the commencement of this suit, the sum of four hundred and twelve dollars, which they refused to pay into the county treasury of the county of Wabash.

"It is further agreed by the parties to this suit, that all special matters of defense, shall be considered to have been introduced, on the trial, under the general issue, by agreement, and that this agreement shall be filed in this cause, and be taken and considered a part of the record hereof.

"It is further agreed that this case shall be submitted to the Supreme Court upon the facts herein stated.

"It is further agreed by the parties to this suit, that the defendants shall pay all costs made in the Supreme Court upon affirmance or reversal of the judgment rendered herein."

The provision of the charter under which plaintiffs in error acted, and received the money, is the sixth section; and the act was adopted at the session of 1835, and is this:

" That the said Trustees shall have power to levy and collect a tax of not exceeding one per cent. on lots, exclusive of improvements, and personal property in said town according to valuation, to tax public shows, and houses of public entertainment, taverns, groceries and stores, for the purpose of making and improving its streets and keeping them in repair," &c.

The authority of the trustees to tax groceries is full and explicit, and the tax thus raised is required to be expended by them for specified purposes enumerated in the act. And we are inclined to hold that, from the connection in which this language appears, it may be construed to authorize them to grant licenses. To tax a grocery by valuing and listing its property was already provided for in the first clause of the section, as a house and its contents are real and personal property.

If such a power is not given by this section, it is conferred by the 14th section of chapter 64, of the Revised Statutes, entitled " Licenses." That section is this : " The president and trustees of incorporated towns shall have the exclusive privilege of granting licenses to groceries within their incorporated limits ; and all sums of money which may be received for licenses granted as aforesaid, shall be paid into the county treasury." This section is explicit, both as to the power to grant licenses and as to the disposition of the money when received for the same. And plaintiff in error was an incorporated town, and is manifestly embraced within its provisions. The language is broad enough to embrace all incorporated towns. It is, however, urged that this section only applies to towns incorporated under the general law, and not to towns incorporated by special charter. An examination of the language employed convinces us that it will not bear that

construction. The language is sufficiently comprehensive to embrace all incorporated towns, whether acting under the general or a special law. And no reason is suggested, nor do we perceive any, why one character of towns should be included and another excluded. The language applies equally to both.

Such a grant is not a vested right, but all municipal corporations are wholly under the law making power of the State, and their charters may be amended, changed or repealed at the legislative will. The power to license groceries, which was conferred by the charter of plaintiff in error, was recognized by the act of 1845, but the money arising therefrom was directed to be applied to a different purpose, and this is still the case, unless it has been altered by subsequent legislation.

By the 4th section of the act of the 10th of February, 1849, (Gross' 2d Ed. Statutes, 100,) it is directed that the corporate authorities of all towns and cities incorporated under chapter 25, entitled " Corporations," of the revised code, or under any special act, shall have power to pass all the ordinances and by-laws, and possess all the powers authorized under the laws and amendatory acts incorporating either of the cities of Springfield or Quincy.

The charters of these cities were adopted on the third day of February, 1840, and the provisions of each are substantially the same.

The charter of the city of Springfield, (Sess. Laws, 1840,) article 5, Section 21, declares that the city shall have power " to tax, restrain and suppress tippling houses, dram shops, gaming houses, bawdy and other disorderly houses." And the 34th section of the same article declares that the city shall have power " to regulate the police of the city, to impose fines, forfeitures and penalties for the breach of any ordinance, and provide for the recovery and appropriation of such fines and forfeitures, and the enforcement of such penalties." The language of the 21st section is comprehensive, and confers large powers over the traffic in spirituous liquors. The power

is to tax, restrain or suppress the sale of liquors; and under the power to tax, we think it was intended to confer the power to license tippling houses; but if this were not so, the power to restrain, manifestly authorizes the city to grant such licenses.   To restrain, the city would be compelled to adopt ordinances for the purpose, and, by that means, bring drinking houses under the necessity of procuring licenses, and paying therefor such sum as might be required.   Such a requirement would be a restraint, reasonable and in accordance with the restraints imposed then and now on the traffic; and such restraint was doubtless in the contemplation of the general assembly when this charter was granted.   It is, no doubt, true, that the city were empowered to resort to other means of restraint—such as requiring such houses to be orderly, and in other respects to conform to such ordinances as might be adopted to properly restrain the business; but the fact that they had other powers conferred for the purpose, in nowise prevented the city from exercising the power to restrain the general free sale of liquor, by requiring that a license should be obtained before it could be sold.

The power contained in the 34th section, to impose fines, penalties and forfeitures, and the collection and appropriation of the same, would seem to clearly indicate the legislative intention to give to the city all moneys arising from the exercise of the powers granted by their charter.   Having failed to provide that the money thus obtained should be paid into the county treasury, or otherwise disposed of, is a strong reason for concluding that it should go into the city treasury, and be disposed of under the authority of the city and for its use.   The charter, in terms, authorizes the city to license auctioneers, merchants and retailers, grocers, taverns, ordinaries, hawkers, peddlers, brokers, pawnbrokers and money changers, together with a large number of other pursuits; and there is nothing to indicate that the money received from that source should be paid into the county or State treasury, nor can it be inferred that such an application of the fund was required.

No other provision having been made, all would say that it belonged to the city. Such has been the immemorial usage and custom in such grants to municipal bodies.

The act of 1849, then, having conferred these powers upon all cities and towns in the State, appellants became invested with them as fully as if expressly named in the act; and if they became, under that law, possessed with the power to license drinking houses and appropriate the money thus received, as we have seen they did, then the power to thus appropriate the money was repugnant to the 14th section of the chapter entitled " Licenses," and being later in date, the prior law must yield to the last expression of the legislative will. Hence appellants had the right, not only to grant the licenses, but to appropriate the money received therefrom to municipal purposes, after the passage of the law of 1849 ; and the money for which this suit is brought having been received after that date, there was no right of recovery, and the judgment of the court below must be reversed.

*Judgment reversed.*