The opinion of the court was delivered by
Brewer, J.:
Volmer was convicted in the district court of Lyon county of keeping a tippling shop in the city of Emporia without any license therefor as required by one of the ordinances of said city. The prosecution was commenced in the police court of the city, and taken on appeal to the district court. Several questions are presented by counsel for the respective parties, and discussed in their briefs at length, and with ability. Of them in their order.
i change of prejudice of .mage. Volmer filed his affidavit in the district court for a change of venue on account of the prejudice of the judge, setting out that the judge some two years before had, in his presence, speaking of and to him, remarked that he was meaner than a horse-thief, a murderer, or a rebel, ¿hat he had no sítame, if he had he (the judge) would make his face burn, and that there had since that time been no reconciliation between them. Whereupon the judge filed a counter affidavit, stating in substance that he did not récollect the remarks, thought he did not make them, but if *625 he did it was while a partner of the city attorney, and engaged in the trial of a prosecution against said Volmer for violating a city ordinance; that he had no prejudice against defendant, that they had been' in the habit of meeting and speaking together in a friendly manner, and until the reading of defendant’s affidavit he was unaware that any other than friendly relations existed between them. Upon this the defendant asked time to file counter affidavits, but the court refused to grant any, and overruled the application for a change of venue. Was there error in this ruling? It must be confessed that it is somewhat novel for a judge to file his own affidavit to be used on a motion before himself, but the novelty, or irregularity, if irregularity it be, of such proceeding does not warrant us in a reversal, if outside and independent of it the substantial rights of the defendant have not been prejudiced. Sections 172 to 178, inclusive, of the code of criminal procedure, provide for changes of venue in criminal cases. Sec. 172 applies where the indictment is against the judge himself. There the removal is by an order in writing of any judge of the supreme court. Sec. 173 is the one under which this application is made. It is as follows:
“Sec. 173. When any indictment or criminal prosecution shall be pending in any district court, the same shall be removed by the order of such court, or judge thereof, to the district court of some county in a different district, in either of the following cases: First, When the judge of the court in which the cause is pending is near of kin to the defendant, by blood or marriage. Second, When the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him. Third, When the judge is anywise interested or prejudiced, or shall have been of counsel in the cause.”
Sections 174 to 177, inclusive, apply to cases where the application is based upon the prejudice of the inhabitants. Sec. 178 provides that "“Whenever it shall be within the knowledge of a court or judge that facts' exist which would entitle a defendant to the removal of any criminal cause on his application, such judge or court may make an order for *626 such removal, without any application by the party for that purpose.” Those sections referring to a change of venue on account of the prejudice of the inhabitants recite that “Whenever it shall appear, in the manner hereinafter provided,” etc., and that manner is thereafter provided to be by petition, disclosing the facts, and verified by affidavit. Now it is claimed that, inasmuch as the statute nowhere specifically provides the manner in which the causes of removal named in § 173 shall be shown, and as these facts are peculiarly within the personal knowledge of the judge, he is to decide any application upon such personal knowledge, and his decision is not subject to review in this court, unless perhaps when shown to have been corruptly made. Who can know so well as he, (it is asked,) whether he is interested in the event of a prosecution, whether the defendant is near of kin, or whether his feelings are friendly or otherwise toward the defendant ? We cannot yield our assent to the doctrine as thus broadly stated. It ignores that which all experience testifies to be true, that he who is prejudiced toward another is seldom conscious of that prejudice, or at least willing to admit it. The judge may not always be personally aware of the relationship, while the fact may be abundantly proved by evidence. It rests a j udicial decision upon extra-j udicial knowledge. “ Had the legislature intended to authorize so strange an anomaly as the decision of judicial questions upon the extra-judicial knowledge of the judge, it is believed such authority would not have been left to doubtful inference, but expressed in clear and unequivocal terms.” (Cobb, C. J., in Smith v. The State, 1 Kas., 392.) On the other hand, it would seem that the personal knowledge of the judge cannot be altogether ignored. At common law there was no such thing as a change of venue on account of the prejudice of the judge. The statute is silent as to the manner of establishing the fact. It declares simply that the change shall be made when the fact exists. The fact must exist. The court must find the fact to exist. If the j udge’s personal knowledge is altogether ignored, it will often place him in a position of being compelled to find that to be a fact *627 which he knows not to be a fact, a fact too which carries with it something of an imputation upon himself. If it were to be determined by simply the affidavit of the defendant, there would be almost numberless changes of venue. Every defendant closely pressed would seek delay in this manner. A change of venue is a wrong to the public, unless the necessities of justice to the defendant require it. It works delay. It causes expense. It endangers a prosecution. A defendant is easily persuaded of the prejudice of the judge. Adverse rulings convince him of the fact, as shown by the case of Burke v. Mayall, 10 Minn., 287. It seems to4 us therefore that this is the true rule: that such facts and circumstances must be proved by affidavits, or other extrinsic testimony, as elearly show that there exists a prejudice on the part of the judge toward the defendant, and unless this prejudice thus elearly appears, a reviewing court' will sustain an overruling of the application, on the ground that the judge must have been personally conscious of the falsity or non-existence of the grounds alleged. It is not sufficient that a prima faeie case only be shown, such a case as would require the sustaining of a challenge to a juror. It must be strong enough to overthrow the presumption in favor of the trial-judge’s integrity, and of the clearness of his perceptions. See, as going beyond the views herein expressed, the cases of Hungerford v. Cushing, 2 Wis., 397; Table M. M. Co. v. Wallers D. M. Co., 4 Nevada, 218. And as sustaining these views, Gordon v. The State, 3 Iowa, 412; The State v. Ingalls, 17 Iowa, 10; Boswell v. Flockhart, 8 Leigh, 364; People v. Williams, 24 Cal., 31. Under these circumstances there can be no impropriety in the judge placing upon record a statement of such facts as may explain the reasons of his ruling, or account for the statements and charges made in the application. It may be remarked also, that the character of the case on trial affects the question to some extent. Where the penalty may be death, or a long term of imprisonment, the trial-judge should listen with more care to the testimony presented to show his bias or prejudice, and a reviewing court *628 will more closely scrutinize the record, and give less weight to the presumption in favor of the correctness of the ruling, than where the penalty can only be a fine, or a short imprisonment in the county jail. Applying these considerations .to the case before us and it does not seem that there is such a clear showing by the defendant of prejudice on the part of the judge as would justify us in reversing his ruling refusing a change of venue. The utmost penalty was a fine of $ 100. The language imputed to the judge was uttered two years before the trial. The circumstances under which it was uttered are not disclosed. It is the language of excited passion, and not of deliberate judgment. It might have been the outburst of momentary indignation .at some act of cruelty or meanness, an outburst which was but the expression of the common judgment of the community. As the 'defendant fails to show under what circumstances it was uttered, all the presumptions would be against him, and not that such expressions were the cropping-out -of an abiding prejudice against him. The .case of The State v. Ingalls, 17 Iowa, 10, is in many respects very similar to this, and the judgment there sustains our conclusions here. And when the explanations tendered by the judge- in his affidavit are considered, it is evident there was no such prejudice as would prevent his securing to the defendant a fair and impartial trial.
2. Title of action. city ordinance. The second objection is, that the prosecution was in the name of “The City of Emporia,” and not in the name of “The State of Kansas.” This- is not well taken. The act incorporating cities of the second class, to which class EmPoria belonged, provides specifically that “All prosecu¿ons f0r violating ’ any city ordinance shall be entitled ‘The city of- against -'” (Laws 1872, p. 216, § 80.) And where the mode of procedure is prescribed by a charter, that mode must be pursued. (Dillon on Municipal Corporations, § 343.) Sec. 17 of art. 3 of the, constitution, which provides that all prosecutions shall be in the name of the state, does not apply to the prosecu *629 tions instituted by a municipality in its own courts for a violation of one of its ordinances. (Williamson v. The Commonwealth, 4 B. Mon., 146; The City of Davenport v. Bird, 34 Iowa, 524; Dillon on Munic. Corp., § 358, and note.)
3. complaint for city ordinance. A third objection is that the complaint or affidavit is bad upon ifs face, because it only purports to set out a part of the ordinance alleged to have been violated. On the contrary we think the complaint amply sufficient. It refers to the ordinance by its title, the time of its approval, and the date and paper of its publication, and then recites in full the specific section which the defendant is alleged to have violated. No authority that we have been able to find requires anything more than this. Dillon on Munic. Corp., § 346, and notes; Keeler v. Milledge, 4 Zab., (N. J.) 142; Kip v. City of Patterson, 2 Dutch., (N. J.) 298.
4. Licensing ana restraining tippling shops, A fourth objection is, that the section of the ordinance under which this prosecution was had is void, because not within the powers granted to the city. That section is as follows:
“Sec. 12. No tippling shop shall be kept within the corporate limits of the city of Emporia without a license having been previously obtained therefor, as herein provided, and any'person offending against the provisions of this section shall be liable to prosecution therefor upon written complaint before the police judge of said city, and, upon conviction, shall be fined in any sum not less than twenty-five dollars or more than one hundred dollars, and costs, and shall be committed until such fine and costs shall be paid, unless an appeal be taken to the district court; and the record of conviction shall, describe the premises,” etc.
The authority for this ordinance is claimed under § 49 of the act of incorporation, which is as follows:
“Sec. 49. The city council shall have power to enact ordinances to restrain, prohibit, and suppress tippling shops, billiard tables, bowling alleys, houses of prostitution, and other disorderly houses and practices, games and gambling houses, desecration of the Sabbath-day, commonly called Sunday, and all kinds of public indecencies. No license shall ever be granted for any house of prostitution, or for any gambling *630 house, gambling device, game of chance, or any disorderly house or practice.” * * *
We think this gives ample authority. The word “ restrain,” is not synonymous with “prohibit,” or “suppress.” It does not contemplate an absolute destruction of the business, but rather a placing it within bounds. From the last clause, which prohibits a license to houses of prostitution, etc., it seems evident that the legislature contemplated that the first granted the power to license. This same question has been presented to the courts of other states, and with like ruling. (City of St. Louis v. Smith, 2 Mo., 113; Trustees of Clintonville v. Meeting, 4 Denio, 341; Town of Mt. Carmel v. Wabash Co., 50 Ill., 69.) In the .opinion in this last case the court, on page 73, uses this language: “The power is to tax, restrain, and suppress the sale of liquors; and under the power to tax, we think it was intended to confer the power to license tippling houses; but if this were not so, the power to restrain manifestly authorizes the city to grant such license. To restrain, the city would be compelled to adopt ordinances for the purpose, and by that means bring drinking-houses under the necessity of procuring licenses and paying therefor such sums as might be required. Such a requirement would be a restraint reasonable and in accordance with the restraints imposed then and now on the traffic, and such restraint was doubtless in the contemplation of the general assembly when this charter was granted. It is no doubt true that the city was empowered to resort to other means of restraint, such as requiring such houses to be orderly, and in other respects to conform to such ordinances, as might be adopted to properly restrain the business; but the fact that they had other powers conferred for the purpose in nowise prevented the city from exercising the power to restrain the general free sale of liquors by requiring that a license should be obtained before it could be sold.”
„ m ., „ , police court. A fifth error alleged is, that a jury trial was refused the defendant in the police court. In the district court a motion was made and overruled to dismiss the case because defendant had been refused a jury trial in the police court. Was he entitled to a jury trial? The *631 statute plainly authorizes such summary proceeding in the police court. (Laws 1872, p. 217, § 83.) And the only question that can be raised is, whether such section conflicts with the provision in § 5 of the Bill of Rights, which declares that “the right of trial by jury shall be inviolate.” Without attempting to decide as to the extent or limits of this constitutional provision, it is enough for us in this case to decide that, where the summary proceeding, authorized by statute, is in a municipal court, for 'the violation of one of the city ordinances, and the defendant may have an appeal, clogged by no unreasonable restrictions, to an appellate court in which he has a right to a trial by jury, this is sufficient, and his constitutional rights are not invaded. (Dillon on Munic. Corp., § 367, and cases cited in note; Byers v. Commonwealth, 42 Penn. St., 89; McGear v. Woodruff, 33 N. J. Law, 213; The State v. Young, 3 Kas., 445.)
e. commisson of mate??!™0 juror. A sixth objection is as to the ruling of the court on challenges to the jurors. In examining the jury for cause, the court only permitted the jurors to answer as to their opinion °f the guilt or innocence of the defendant on “the 24th of Juné 1873.” The defendant desired them to answer as to that day or any previous time between that time and the 29th of May 1873, which was after the ordinance purported to go into force, which the court refused to permit them to do; to which the defendant excepted. And after the defendant exhausted all his peremptory challenges, some jurors remained and tried the case who were not permitted to, and therefore did not answer as to their opinion, except as to “the 24th of June 1873.” If this ruling stood by itself, we should be compelled to hold it error. Time is not of the essence of this offense, and under such a charge the defendant could have been convicted of the offense, if committed on the 20th of June, or upon any day intermediate the commencement of the prosecution and the 29th of May 1873, when the ordinance went into effect. But upon the trial the court limited the investigation to the day charged in the complaint, to-wit, “June 24th, 1873,” and instructed the *632 jury that they must be satisfied beyond a reasonable doubt that defendant was guilty of a violation of the ordinance upon that day, or else they must acquit him.' Did not the last ruling obviate any error in the first? We are inclined to think that it did. The question is not free from doubt and difficulty, but the whole case having been limited to a single day, we are disposed to hold that the substantial rights of the defendant have not been prejudiced by the like limitation in the examination of the jurors. •
i. Tippling shops, Rouses!°i4ei 7 The seventh question presented is on the instructions. After the court had instructed the jury generally, the defendant asked the following special instructions:
“1st. If you believe that the defendant Volmer sold four or five drinks of intoxicating liquors,'and permitted the same to be drank on his premises, and said premises were the house in question, this of itself, without any other attendant circumstances, would not be sufficient evidence of his keeping a tippling shop.
“ 2d. A tippling shop is a place kept for the general resort of persons to drink intoxicating liquors, and idle away their time, and nothing short of this would be a tippling shop.”
Each of these instructions the court refused; to each of which the defendant excepted. In its general instructions the court had defined a “tippling house to be a place of public resort, where spiritous, fermented, or other intoxicating liquors are sold and drank in small quantities, without having a license therefor.” Bouvier’s Law Dictionary reads thus: “Tippling House — a place where spirituous liquors are sold and drank in violation of law. Sometimes the mere selling is considered as evidence of keeping a tippling house.” To like effect are the definitions in Webster’s and Worcester’s dictionaries. See also Morrison v. Commonwealth, 7 Dana, 218. We see no error in the ruling of the court in refusing these instructions. The idea of counsel for the defendant, that a tippling shop is technically “a disorderly house, a nuisance, and that therefore some facts must be shown from which disorderly conduct could at least be inferred,” does hot seem to *633 us correct. Both terms, “tippling shop” and “disorderly house,” have in the law well-settled and well-defined meanings, and those meanings are not identical, nor is either necessarily included in the other.
The objection that the verdict is not sustained by the evidence does not seem to us to demand any extended remarks. We think the testimony was ample.
Upon the whole case we are constrained to say that the defendant seems to have had a fair trial, and been properly convicted. The judgment of the district court will be'affirmed.
All the Justices concurring.