THE STATE OF KANSAS v. BALFE H. STARK.

No. 12,602. (66 Pac. 243.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Common Nuisance—Abatement.* All places where intoxicating liquors are sold or kept for sale, or places where persons are permitted to resort for the purpose of drinking the same, are declared by statute to be common nuisances. This fact, however, does not justify their abatement by any person or persons without process of law. They can be abated only by a prosecution instituted in behalf of the public by the proper officer. The destruction or injury of property used in aid of the maintenance of such nuisances, except in the manner provided by the statute, is a trespass.

2. CRIMINAL PRACTICE—*Change of Venue.* A change of venue in a criminal prosecution is a wrong to the public unless the necessities of justice to the accused require it. Prejudice on the part of a judge must clearly appear. A *prima facie* showing of prejudice is insufficient. The case of *City of Emporia v. Volmer*, 12 Kan. 622, followed.

3. MISDEMEANORS—*Accessaries.* In the commission of a misdemeanor there are no accessaries. All persons aiding or counseling are principals.

Appeal from Shawnee district court; Z. T. HAZEN, judge. Opinion filed October 5, 1901. Division one. Affirmed.

STATEMENT.

THE appellant, with Carrie Nation and six others, was charged by information with malicious trespass, under section 2053 of the General Statutes of 1899 (Gen. Stat. 1901, § 2100). The offense alleged was that defendants did, on or about the 17th day of February, 1901, wilfully, unlawfully and maliciously break, destroy and injure the door and windows of a building at No. 111 East Sixth street, in the city of Topeka, used as a cigar store and billiard hall by F. H. Murphy. Having obtained a separate trial, the

34—63 KAN.

appellant moved the court for a change of venue on the ground of the prejudice of the presiding judge against him. This application was based on language used by the judge toward Carrie Nation and three others who were brought before him upon proceedings wherein they were held to give bond to keep the peace, the charges against them being substantially the same as those contained in the information against the appellant, to wit, the destruction of property. The latter, however, was not a party to that prosecution. In addressing Mrs. Nation and the three others, the judge stated that the action of the parties was wholly unwarranted by any construction to be placed on the law, and further said :

"I want to say to you people who appear charged with having aided and abetted her that this is a court of law, and not one of sentiment. Having broken the law, you have no more rights in this court than the jointist. Your contempt of the law is as great as his. Mrs. Nation and her followers made an attack Sunday upon a perfectly legitimate business in which $100,000 is invested. They have repeatedly broken the law and destroyed property and gone unhindered and unpunished. The time has come in this community when people are demanding that something be done. I want to say to you that this unwarranted destruction of property must stop. Have people no rights that a crazy woman and her deluded followers are bound to respect? There is not a lawyer in this room who will not tell you that you have no right under the law to do these things. . . . You have no right to attempt to abate a nuisance except through the regular channels. Reputable men in this community have given sanction to a movement that has led to riot and may lead to bloodshed. I want to say to you people who have been placed under bond that if you go out on any more raids your bondsmen will be compelled to forfeit the amount to the last penny.

I want to make this proposition clear to you.   Property must and will be defended."

The information was filed February 17, and the case called for hearing February 20, and thereon passed until February 25.   A motion was then made by appellant for a postponement on account of the sickness of Mr. Stone, one of his counsel, and for the reason that Mr. Martin, his other attorney, had been unable to prepare for trial.   The application was made by Mr. Troutman and Mr. Bain, who appeared on behalf of the appellant and showed that they had made no preparation for the trial.   The application was overruled, a jury impaneled, and a verdict of guilty returned, followed by a fine imposed on the defendant of twenty-five dollars, with the costs of the prosecution.

*Galen Nichols*, county attorney, for The State.

*Troutman & Stone, D. H. Martin*, and *Thos. H. Bain*, for appellant.

The opinion of the court was delivered by

SMITH, J. :  The court did not err in overruling the application for a change of venue.   The remarks of the judge were made to Carrie Nation 2. Change of venue. and others in a proceeding to which the appellant was not a party.   No personal prejudice towards Stark was shown.   From all that appears, the judge might have been kindly disposed toward the defendant.   The attack on Sunday, referred to by the judge, related to the conduct of other parties with whom the appellant was not connected.   Had the language coming from the bench been directed to Stark, he might have had reason to complain.   His case was not, however, before the court at that time.

It has been held that a change of venue is a wrong to the public, unless the interests of justice to the defendant require it, and that prejudice on the part of a judge toward a defendant must clearly appear. It is not sufficient that a *prima facie* case only be shown. (*City of Emporia v. Volmer*, 12 Kan. 622, 627.) The record shows that the district judge tried the case with fairness, and the punishment imposed was exceedingly moderate, considering that the maximum for such offenses is imprisonment in the county jail not exceeding one year, and fine not exceeding $500, or both such fine and imprisonment.

The granting of a continuance was largely a matter within the discretion of the court. The offense charged was a misdemeanor. We do not think any of the rights of the defendant were prejudicially affected by the absence of attorneys who had prepared for the trial. He was represented by counsel of high standing and ability, and we find nothing in the record to indicate that any point favorable to him was overlooked.

There was some confusion in the answers made by the juror Hale Ritchie touching his opinion of the guilt or innocence of the defendant, but his whole examination, taken together, does not show him to have been disqualified.

Complaint is made that several of defendant's witnesses, upon cross-examination, were subjected to rigid inquiries as to the existence of a certain organization formed for the purpose of destroying property. Nothing more was extracted by the state from such witnesses than the defendant himself confessed concerning such organization. He admitted that he was a member of a company which assembled on the state-house steps and from there

**3. Accessaries in misdemeanors.**

moved to the place where the property in question was injured, and that he took an ax along because he thought he might be called on to use it. There was no error in the instruction that if the defendant was present, advising, counseling or encouraging the breaking of the doors and windows, he was equally as guilty with those actually committing the offense, although he may not in person have injured said property. In misdemeanors, all concerned, if guilty at all, are principals. (*The State v. Gurnee*, 14 Kan. 111 ; *Sharpe v. Williams*, 41 id. 56, 20 Pac. 497.)

The appellant offered to prove that the prosecuting witness, at the time the trespass was committed and his property injured and destroyed, was the keeper of a place where intoxicating liquors were sold as a beverage in violation of law, and that the property in question was unlawfully used as an accessory thereto.

1. Right to abate common nuisances.

This offer was rejected by the court and the testimony excluded. Upon this ruling the question arises whether, the owner of the property having employed it as an aid to the maintenance of a common nuisance, the appellant was justified in being a party to its destruction without process of law. Under our statutes all places where intoxicating liquors are sold, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where such liquors are kept for sale, barter or delivery in violation of the prohibitory liquor law, are declared to be common nuisances ; and, upon the judgment of a court having jurisdiction that such places are nuisances, the sheriff or constable or marshal of any city where the same are located shall be directed to shut up and abate such places, by taking possession thereof, and of all intoxicating liquors found therein, together with

all signs, screens, bars, bottles, glasses and other property used in keeping and maintaining said nuisances, and the same shall be forthwith publicly destroyed by such officer. It is further provided that the attorney-general, county attorney, or any citizen of the county where such a nuisance exists, may maintain an action in the name of the state to abate and perpetually enjoin it. Here is a complete legal remedy, easy to obtain, which was open to the appellant or any of his associates. Indeed, we believe it to be more drastic and summary in its application to the subject than the law of any other state in the union.

The existence of such common or public nuisance as appellant offered to show was kept by the prosecuting witness, in violation of law, injuriously affected all other persons in the city of Topeka equally with himself. It is not claimed that he was specially injured, or peculiarly or individually hurt, in any other manner or degree than in common with all others in the community. He could not have maintained an action in his own name to abate the nuisance. (*Jones v. Chanute*, ante, p. 243, 65 Pac. 243.)

In the case of *Brown v. Perkins and wife*, 12 Gray, 89, the supreme court of Massachusetts had before it a similar question. In an action of tort for breaking and entering the plaintiff's shop and carrying away and destroying a barrel of vinegar and other goods, the answer of the defendant alleged that the building was kept for the sale of intoxicating liquors and was a public nuisance; that a large number of persons assembled to abate the same, and destroyed or injured no article of merchandise, but only spirituous liquor, unlawfully kept for sale, and did no other act, and used no more force, than was necessary to abate such nuisance. By statute in force in Massachusetts at that

time, all intoxicating liquors kept for sale, and the vessels and implements actually used in selling and keeping the same, were declared to be common nuisances and were to be regarded and treated as such. By another statute, all buildings or tenements used for the illegal keeping or sale of intoxicating liquors were declared to be common nuisances. The trial court instructed the jury that intoxicating liquors kept for sale, with the vessels containing them and articles used in their sale, being declared by law to be a common nuisance, it was lawful for any person to destroy them by way of abatement, and that such action would be the exercise of a common and lawful right. This instruction was held to be erroneous. The opinion was delivered by Chief Justice Shaw, one of the ablest of American jurists, and we extract from it such portions as are most pertinent to the question before us:

"It is not lawful by the common law for any and all persons to abate a common nuisance, merely because it is a common nuisance, though the doctrine may have been sometimes stated in terms so general as to give countenance to this supposition. This right and power is never entrusted to individuals in general, without process of law, by way of vindicating the public right, but solely for the relief of a party whose right is obstructed by such nuisance." (Page 101.)

"The true theory of abatement of nuisance is that an individual citizen may abate a private nuisance injurious to him, when he could also bring an action; and also, when a common nuisance obstructs his individual right, he may remove it to enable him to enjoy that right, and he cannot be called in question for so doing. As in the case of the obstruction across a highway; and an unauthorized bridge across a navigable watercourse, if he has occasion to use it, he may remove it by way of abatement. But this would not justify strangers, being inhabitants of other parts

of the commonwealth, having no such occasion to use it, to do the same. Some of the earlier cases, perhaps, in laying down the general proposition that private subjects may abate a common nuisance, did not expressly mark this distinction; but we think, upon the authority of modern cases, where the distinctions are more accurately made, and upon principle, this is the true rule of law.'' (Pages 101, 102.)

''The keeping of a building for the sale of intoxicating liquors, if a nuisance at all, is exclusively a common nuisance; and the fact that the husbands, wives, children or servants of any person do frequent such a place and get intoxicating liquor there does not make it a special nuisance or injury to their private rights, so as to authorize and justify such persons in breaking into the shop or building where it is thus sold, and destroying the liquor there found, and the vessels in which it may be kept; but it can only be prosecuted as a public or common nuisance in the mode prescribed by law.'' (Page 102.)

This enunciation of the law finds approval in all the text-books upon the subject, so far as we have examined them. (Wood, Nuis. [3d ed.] 966–968; Webb, Poll. Torts, 515, and note; see, also, *Corthell v. Holmes*, 87 Me. 24, 32 Atl. 715.) In Webb's Pollock on Torts, page 517, it is stated that in England the application of the remedy of abatement, by the forcible act of an individual, is now in use only as to rights of common, rights of way, and, sometimes, rights of water, ''and even in those cases it ought never to be used without good advisement.''

A fence across a public road is a common nuisance which a person journeying along the highway may legally abate by removing the obstruction. This is so because his progress is impeded and particular injury is sustained by him not shared in by the community generally. This right of abatement, however, cannot be lawfully exercised by one living at a distance from

the obstructed way, with no immediate occasion to use it, who goes out for the express purpose of removing the impediment in the interest of the traveling public, for fear that he or his neighbors might receive injury from it.

The appellant and his associates proceeded on the erroneous belief that because the prosecuting witness was a violator of the law they might right the wrongs the public was suffering by his acts, and this in a summary manner, by resort to physical force, guided only by the counsels of a mob. It was a congregation of lawbreakers on one side retaliating upon an individual lawbreaker on the other, for lawless acts of the latter which affected not them alone but hundreds of others (the public), whom they assumed to represent. Courts of justice cannot approve or countenance such disregard of the law. To do so would create and encourage disrespect for all governmental restraint, which is the beginning of anarchy.

The judgment of the district court will be affirmed.

JOHNSTON, GREENE, ELLIS, JJ., concurring.