THE STATE OF KANSAS v. BARNEY BOHAN.

1. CHANGE OF VENUE, *in Criminal Actions.* A motion for a change of venue was supported by the affidavits of the accused and two others, showing facts that made out a *prima facie* cause for a change of venue; but the state filed over ninety affidavits controverting the conclusions of those of the accused. The trial court did not err in refusing a change of venue.

2. DYING DECLARATIONS, *when Admissible.* So-called dying declarations are only admissible where the death of the person who made the declaration is the subject of the charge and the investigation.

The State v. Bohan.

*Appeal from Saline District Court.*

INFORMATION for murder. Trial, and verdict of guilty, at the November Term 1874. A motion for a new trial was made, and continued until the March Term 1875, when a new trial was refused, and defendant was sentenced to imprisonment in the penitentiary for twenty years. From this sentence *Bohan* appeals. Numerous errors are assigned, and are discussed in briefs of counsel, as filed, but only two questions are considered by this court, and these, and the facts and proceedings in relation to them sufficiently appear in appellant's brief, and the opinion, *infra.*

*Stillings & Fenlon, J. G. Mohler,* and *J. G. Spivey,* for appellant:

As appears by the record, the information charged that appellant did, on the 3d of November 1874, murder one Thomas Anderson. It appears by the record, that on the same day another information was filed against said appellant, in the same court, charging appellant with the murder of one William N. Anderson. It further appears from the testimony preserved in the record, that on the day mentioned in the informations, the persons mentioned in the two informations were shot by appellant; that Thomas Anderson died almost instantly, and without uttering a word; that William N. Anderson lived for fifteen hours after the shooting, and prior to his death made certain statements, which are called "dying declarations." Ten days after the alleged homicide, and two days after the filing of the informations, the appellant was brought into court to answer to the said informations, and thereupon moved for a change of venue, which was refused. An exception to such ruling was taken by the appellant. The case being then ordered to proceed, resulted in a verdict against the appellant of " murder in the second degree." A motion was duly filed for a new trial, the hearing of which, and all further proceedings, were postponed and continued till the then next term of said court. At the

next term of court, and on the 31st of March 1875 the motion was overruled, and judgment rendered on the verdict. It further appears by the record that at the same time Thomas Anderson was killed, William N. Anderson was also killed under precisely the same circumstances. Also, that at the November term of court, immediately after the homicide, the appellant was, against his protest, tried in Saline county and convicted of murder in the second degree for the killing of Thomas Anderson, and was subsequently tried, in March 1875, for the murder of William N. Anderson, and was acquitted.

The evidence shows that when the appellant was tried for the killing of Thomas Anderson, the public mind in Saline county was *prejudiced, embittered and poisoned* against the appellant to such an extent that a fair trial could not have been had. And the newspapers, whose articles are copied in the record, do not state *one single fact in the case,* as shown conclusively by the sworn evidence. We submit as part of the history of this case, and as a fact to be seriously considered by thoughtful men everywhere, that it is about time that the press, beneficial as it is, should in some way be made to comprehend that the life, liberty and character of a citizen are not thoughtlessly or ignorantly to be jeopardized by it. It is in this case—as shown by the sworn evidence introduced under all the guards and protections of the law—absolutely appalling to read the statements made by the papers regarding this transaction; and considering their tremendous influence on a moral community, which looks to the home press for facts of local importance, it is not perhaps to be wondered at, that in November, and but a few days after the affair, a jury infected by the general horror produced by these newspaper articles should convict on facts and circumstances, which four months afterward, when the fever had passed away, convinced the calmer minds of the same community that the prisoner on trial was innocent of crime. The strange peculiarity of this case is this: that the killing Thomas Anderson, when tried therefor in November was murder, but the killing of William

27—15 KAS.

N. Anderson, under precisely the same circumstances, done at the same time, by the same person, with the same weapon, when tried therefor during the succeeding March, was no crime at all.

1. The district court erred in not granting the motion for a change of venue. This court will notice that the motion for a new trial was not argued till after the trial for the murder of William' N. Anderson, in March 1875. The evidence introduced on the hearing of the motion for a change of venue, at least *tended* to show a state of feeling existing in the community during the prevalence of which, and for that cause it might reasonably be supposed it would be dangerous to the prisoner to be tried. The newspaper articles — conclusively proved false and groundless — the proof of the acts of the lawless mob who attempted the life of the prisoner, and attacked the jail of the county in the presence of the judge of the court, and during term time, is certainly some evidence tending to show the existence of that state of feeling in which, and by which, the law in its justice and humanity declares no citizen shall be tried. As to these facts, there is no counter evidence. A number of persons, residents of the county, and doubtless reputable citizens, file their affidavits to the effect that in their opinion a fair trial could be had — and this is all the answer. It is only for convenience sake that the law provides that a person charged with crime shall be tried in the county in which it is alleged the crime was committed. The great purpose and design of the law is that a fair, impartial trial shall be had; and where that cannot be had, or there is rational ground to believe it cannot be had, the law intends, proposes, designs that the venue shall be changed. Of course, a discretion is vested in the trial judge, but this must be a judicial discretion, and when abused, as we respectfully submit it was in this case, the right of the party injured is to submit the case to this tribunal. There is no arbitrary power granted to the trial judge, no discretion involving the life or liberty of the citizen, that is not subject to revision by this court. It is not unknown to the student of the judicial history of our

own country, as well as that from which we derive the principles and practices of our jurisprudence, that judges even have trembled before or at the sound of the popular howl. And the right, and the power, and the duty of this, the highest judicial authority of the state, and the last resource of the citizen, to control the action of the trial judge, cannot be doubted; and we submit that when this court takes into consideration the evidence submitted on the hearing of the motion, and the other fact exhibited by the record of the acquittal of the prisoner *on another trial at a subsequent time, on the same facts,* it must, (as it seems to us,) be apparent that the first conviction was obtained *not on the evidence,* but by reason of the existing prejudice in the community. If facts, such as are shown by the record here, the false newspaper articles, the mob and the violence attempted and perpetrated on the public officials and the public buildings, the verdict of an able jury on the same facts at a subsequent period, if all these do not make out a case for a change of venue, as contemplated by the statute, what in the name of reason would make out a case as so contemplated?

2. The court erred in admitting the so-called "dying declaration" of William N. Anderson. There was no sufficient preliminary proof made that the person making the declaration was *in extremis.* (7 Iowa, 287, 347.) We submit that there is no evidence in this case to show that at the time Wm. N. Anderson made the statement, he was *then* under a sense of impending dissolution. The fact that he said he did not expect to live, or words to that import, and bid good-bye to the boys, is certainly not sufficient to show that the *last hope of life had fled,* and that condition of mind must be shown under the authorities, before any dying declaration can be received in evidence. See 1 Greenl. Ev., §§ 156, 158, 162, 346; 3 Phillips Ev., § 236; *The State v. Medlicott,* 9 Kas. 257. It is apparent from the testimony of Dr. Stearns, that the person making the declaration was not in possession of sound mental faculties at the time such declaration was made. The mental condition of the declarant must be such as would

warrant a court in permitting his testimony, if sworn in court. It is shown by the evidence that Wm. N. Anderson, when the declaration was being made, was at least half unconscious, and under the influence of morphine. No such witness could have been allowed in open court to testify.

The declaration made was verbal, and that introduced in evidence was the written memorandum of the' person who heard it made. The record shows that the whole declaration made by the person was not reduced to writing, but only that part which the witness Cunningham thought was necessary to write out. The person making the declaration never saw, or read, or heard read, or signed the paper received in evidence, or knew its contents. A written paper made by Cunningham, a mere memorandum of his, *not of what the declarant said*, but *of that part* of what he said which *Cunningham thought* material, not dictated by the declarant, not seen or read by the declarant, not read to him, signed by him, or assented to by him, of the contents of which memorandum the declarant had no knowledge, is offered and received in evidence as declarant's "dying declaration." We imagine the bare statement of this is sufficient, and we challenge the judicial records of the world to produce any precedent for such ruling.

3. The dying declaration of *Wm. N.* Anderson, made fifteen hours after the death of Thomas Anderson, even if not subject to any of the objections heretofore made, is not competent evidence against the defendant upon his trial on an information for the murder of *Thomas* Anderson. The' exception in favor of dying statements, in cases of homicide, is confined solely to the statements of *the person whose death is the subject-matter of investigation*. This is the settled rule in this country, and in England. But it is probable, cases can be found which in the slightest degree depart from this rule, and these when examined do not really depart from the rule. It will not be claimed here, we presume, that this statement was part of the *res gestœ*. And it leaves the bald, naked proposition, for the first time affirmed by any court, since murder trials

have been conducted according to known rules of evidence, that the statement of a person, whose death is not the subject of inquiry, not under oath, not in the presence of the accused, not subject to cross-examination, not subject to the pains and penalties of perjury, or subject to civil damages, may be had in evidence against the accused. If this be the law, to his enduring honor be it said, a Kansas judge has first discovered it. If Wm. N. Anderson's statement so taken could be read in evidence, why not the statement of an hundred others who might claim that they were present at the time of the homicide; and if competent, when made fifteen hours after the act of killing, why not fifteen days, or fifteen years? If the only fact necessary to make his statement competent, was, that he *in extremis, in articulo mortis,* then if made by him twenty years after the killing, it would still be competent, if he then made it under like circumstances. If he could do so, of course it follows that twenty or a hundred others could at different periods, under like sense of impending death, do the same. This doctrine carried to its logical result would break down all the barriers which the wisdom of the judiciary, and legislation of ages, has enacted for the protection of the citizen. Taking the case all in all, its history and surroundings, our duty to our client, justifies us in the assertion that the trial, verdict, judgment and sentence combined, are a gross judicial outrage, and we confidently appeal to this court for the right which has been denied us elsewhere. This court has heretofore said, ( 1 Kas. 42,) " We have no right to consider probabilities in reference to a single case, when called upon to apply the general principles of established law, and to register a precedent for the future action of courts. We perform a single and unmixed duty when we declare, upon the call of the accused, what are his legal rights." And in numerous cases, even against popular clamor, this court has laid deep and firm the just principle of the law in this state, that no man shall suffer unless in accordance with law. The cases of *Horne v. The State,* 1 Kas. 42; *Smith v. The State,* 1 Kas. 365; *Craft v. The State,*

3 Kas. 450; *The State v. Medlicott,* 9 Kas. 257; *The State v. Reddick,* 7 Kas. 143, and other leading cases, are familiar to the profession and the people, and the principles that underlie them all are the principles of the civilized administration of criminal justice, which may not in this age be set aside.

*A. M. F. Randolph,* attorney-general, for The State:

1. As to the error first alleged, we submit that the record shows to a moral certainty, that when the appellant was tried for the killing of Thomas Anderson, the public mind in Saline county was not "prejudiced, embittered and poisoned" against him to such an extent that he did not, and could not, have a fair and impartial trial in said county. The affida- davits of Bohan, Fitzpatrick and Going in support of the motion for a change of venue, are utterly overwhelmed by the opposing testimony of ninety citizens of Saline county, representing each and every one of the thirteen townships thereof, said affidavits being to the effect that in the several townships of said county there was no undue excitement or bitterness of feeling over the killing of Thomas and Wm. N. Anderson by the said Barney Bohan, that these three persons were not generally known in said county outside of Brook- ville, in the western part thereof, and in its vicinity, and in Salina, and that there was no prejudice against said Bohan so that he could not then have a fair and impartial trial in said county. These affidavits show that the jury and the inhabitants of Saline county were not, as it is alleged, "in- fected by a general horror produced by the newspaper articles" embodied in Bohan's affidavit. The articles were generally calm and temperate in their tone, and did not seek to prejudice Bohan's case. The feeling against Bohan was mostly confined to the personal friends of the Andersons.

2. We submit that the court did not err in admitting the so-called declarations of William N. Anderson. There was sufficient preliminary proof that the said Anderson was *in extremis* at the time of his making said declarations, and that they were made under a sense of impending death. Also,

that he was conscious of his condition at the time of his making such declarations, and that all that was relevant to the shooting was exactly taken down by Cunningham. As to the objection that the statement was not read and signed by the declarant, see the following authorities: 1 Greenl. Ev. § 161; 20 Iowa, 257, 260; 11 Iowa, 350–359; 20 Ark. 36, 45; 10 Cal. 32, 36, 37; 1 Meigs (Tenn.) 106, 107; 11 Cush. (Mass.) 417; 5 Allen, 495; 16 Miss. 401; 17 Ala. 587, 618; 1 Jones (N. C.) Law, 251; 11 Ired. 513; 13 Ired. 184; 12 Ala. 764; 1 Park Cr., 299.

3. As to the objection, that the dying declaration of Wm. N. Anderson is not competent evidence against Bohan upon his trial on an information for the murder of Thomas Anderson, we submit that it was properly received. The killing of Thomas Anderson was inseparably connected with the killing of William N. Anderson, as a part of the res gestœ. The killing of both brothers was all one transaction. The facts and circumstances attending their deaths linked them together in their last hours as closely as if they were the Siamese twins. The State v. Terrell, 12 Rich. (S. C.) 321, 329; Rex v. Baker, 2 Moody & Rob. 53; 1 Greenl. Ev. 156, note; State v. Wilson, 23 La. An. 558.

4. We submit further, that if the declaration in writing of Wm. N. Anderson should be held to have been improperly admitted, then that this error is wholly insufficient to reverse the judgments herein. Said statement contains nothing whatever but cumulative evidence. Each and all the facts contained therein were otherwise fully established by competent evidence in the case, mainly by the testimony of Bohan himself.

The opinion of the court was delivered by

KINGMAN, C. J.: The appellant was tried for the murder of Thomas Anderson, and found guilty of murder in the second degree, and brings the case to this court by appeal. In the argument attention is called to two errors of the court below. These alleged errors are, first, in not granting the

The State v. Bohan.

motion for a change of venue, and second, in admitting the so-called dying declaration of William N. Anderson in evidence.

Did the court err in refusing to order a change of venue? The application was supported by the affidavits of the appellant, the sheriff, and the acting jailor of the county. These affidavits made out a *prima facie* case for removal, but the state read a great number (over ninety) affidavits, from citizens of each of the townships of the county, abundantly showing that there was no such state of feeling generally prevailing throughout the county as would prevent the accused from having a fair and impartial trial therein, or would even make it difficult to obtain an impartial jury for the trial. Outside the village of Brookville, where the accused and the deceased had resided, and been generally known, there seems to have been no more feeling than usually prevails in any community where there is a homicide. Two lives were taken by violence. The better feelings of men were shocked by the event. Some intemperance of expression may be expected in such cases from men; but it is obvious, that where that feeling existed, it created no strong prejudice against the accused. The extracts from the two papers at Salina, while they in several important respects stated the facts more harshly against the accused than the testimony justified, yet they at the same time cautioned their readers that the statements made were gathered from reports, and must not be considered as being reliable, and that it was the duty of all to wait till the case was heard before forming their opinions. With this caution before the reader, the mistakes as to the facts would hardly create a prejudice against the accused in the minds of fair men. There were articles in the Brookville paper strongly tending to inflame the public mind, and perhaps so intended; but that paper had little circulation in the county outside of Brookville, and in several of the townships was not known at all. Following the decision in the case of *The State v. Horne*, 9 Kas. 119, we are of the opinion that there was no error in refusing a change of venue.

Was there error in admitting the dying declaration of William N. Anderson? It is so urged on various grounds, the principal of which are these: because the preliminary proof did not sufficiently show that the person making the declaration was certain that the hand of death was on him; that he was not in possession of sound mental faculties at the time such declaration was made; that all the declarant said, was not reduced to writing, but only that part that the writer deemed relevant; and chiefly, because the dying declaration of William N. Anderson, made hours after the death of Thomas Anderson, is not competent evidence against the accused upon his trial on an information for the murder of Thomas Anderson only. As our conclusion on the last point suggested is decisive in the case, the consideration of the other points may be waived, especially as their decision depends upon questions of fact raised upon the record, rather than upon controverted points of law. The facts of the case bearing upon the question under consideration are substantially these: A little before four o'clock A.M., on the 3d of November 1874, the appellant shot Thomas Anderson and William N. Anderson. The shots (four in number) were in rapid succession, but a brief time intervening between the first and last shots. Of the wounds then inflicted, Thomas Anderson died almost instantly, without uttering a word. William N. Anderson lived about seventeen hours, and sometime about noon made the statement admitted as a dying declaration. The appellant was tried on an information for the murder of Thomas Anderson only. On these facts the question arises, Can the dying declaration of one person be received as proof of guilt against a party charged with murdering some other person? In *The State v. Medlicott*, 9 Kas. 283, the rule on this point was thus stated: "Such declarations therefore are admissible only when the death of the person who made the declaration is the subject of the charge, and where the circumstances of the death are the subject of the dying declaration." In that case the question involved was, whether the deceased was in the full belief that he was

*in articulo mortis* when he made the declaration; and the attention of the court was mainly directed to that question, and the part quoted need not have been stated. The court therefore feels no such embarrassment on account of what was said in that case as will interfere with a full examination of the question now. In 1 Phillips on Ev., 287, the rule is laid down thus: "Such declarations are generally admissible only where the death of the declarant is the subject of the inquiry, and where the circumstances of the death are the subject of the dying declaration." And to the same effect the rule is laid down in the decisions generally. In a note to § 156, 1 Greenl. on Ev., Mr. Redfield states, that this evidence is not received upon any other ground than that of necessity, in order to prevent murder going unpunished; and that a misapprehension of the true grounds on which such testimony can be received, has sometimes led courts into error, as in England, where, at one time such declarations were admitted in other than murder cases. But these decisions have been overruled, as not correctly stating the law. The admission of this kind of testimony is an exception to the general rule that excludes hearsay testimony. Its admission can be justified only on the ground of absolute necessity, growing out of the fact that the murderer, by putting the witness, and generally the sole witness of his crime, beyond the power of the court, by killing him, shall not thereby escape the consequences of his crime. On no other ground can the admission of such testimony be justified. It is true that sometimes courts have given, as the reasons for its admission, some of those limitations that have been established as safeguards to prevent the rule from being abused. Such statements are not sound, and are likely to lead to confusion, and in some cases they undoubtedly have done so. Necessity, then, being the only ground on which such testimony can be admitted, it remains to be seen whether that necessity exists so generally, or to so great an extent, where the death of any one else than the declarant is the subject of the inquiry, as to justify the adoption of a rule

admitting such testimony. Cases may be suggested where the necessity appears to be strong. Thus, where a murder is committed, and a material witness of the crime, but not affected by it, and by whom alone it can be proven, is dying, and in that hour makes a declaration of the facts which he knows, and which took place months before. This declaration is made under circumstances equivalent to the sanction of an oath; but the accused cannot cross-examine, cannot call attention to other material facts not thought of by the declarant. No one will contend that this declaration can be given in evidence. The necessity exists, but it applies to a single case, and not to a class of cases, and therefore should not be made an exception to the rule excluding hearsay testimony. It would be as difficult to suggest a case where, as in this, two men are killed at or near the same time, that any necessity exists for the admission of the statement of the one whose death was not the subject of the inquiry, as it is in any other criminal case where a material witness is dead. This case is a fair illustration. If the declaration of William N. Anderson was necessary to convict the accused, then it could have been used on the trial for the murder of William N. Anderson. The accused was as guilty of his murder as of that of Thomas. There is then no necessity for extending the exception further than has already been done. Once break down the barriers established by the wisdom of our law, and extend the exception beyond the reason that permitted it, and it would let in a most dangerous species of evidence in a whole class of cases. The great weight of authority will bear out the rule as laid down in *The State v. Medlicott.* And reason is all in favor of holding the rule as there stated. In the cases of *State v. Terrell*, 12 Rich. (S. C.) 321, and of *State v. Wilson*, 23 La. An. 558, which greatly resemble this case, such evidence was admitted. The cases do not in our judgment rest on authority, and no satisfactory reasons are given for the ruling. These cases stand alone in this country, and we prefer to adhere to well-established rules, rather than follow decisions for which no reason is given,

and which seem dangerous in their tendency. It follows that the evidence was improperly admitted. The learned counsel for the state however, suggests, that the case was abundantly made out in every particular against the appellant by other evidence. This may be so, and if so, it is a striking illustration of how unnecessary it was to introduce the dying declaration in this case. But what effect this evidence had upon the jury, and what effect the other evidence had, it is not the province of this court to decide; nor has it the means of doing so. The evidence was admitted after a long struggle, and may well have had more influence upon the jury than it would have upon this court. The evidence was vital, and as it was improperly admitted the judgment must be reversed, and a new trial ordered.

All the Justices concurring.