### BURL RADFORD V. THE STATE.

*No. 523.     Decided June 30.*

1. **Murder—Dying Declarations Admissible Only as to the Killing of Deceased.**—On a trial for the murder of one L., where the evidence showed that two parties, L. and his wife, were assaulted and wounded the same night, L. being killed outright; and the State was permitted to prove, over objection, the dying declarations of Mrs. L., the wife, made some three weeks after the killing of L., to the effect that defendant was the party who killed her husband. *Held,* that the dying declarations were inadmissible. Under the provisions of article 748 of the Code of Criminal Procedure, dying declarations are admissible only where the death of the party making the declarations is the subject of investigation.

2. **Same—Explanatory Evidence.**—On a trial for murder, where it was shown that defendant, when arrested the morning after the murder, was found by the officer in possession of a key which fitted the lock of the door in the house of the murdered party, *Held,* that defendant was entitled to prove, as explanatory of his possession of the key, that he told the officer, when asked about it, that the key belonged to one W., from whom he (defendant) had rented a room in the city of D., and that it was error to exclude the evidence.

3. **Same—Indictment—Allegations as to Burglary, Robbery, etc.**—Where an indictment for murder charges that it was committed only upon malice aforethought, *Held,* under the decisions of this State, that it is legitimate to prove that it was committed in the perpetration or attempted perpetration of robbery or burglary, notwithstanding the indictment contained no such specific allegations.

APPEAL from the District Court of McLennan. Tried below before Hon. S. R. SCOTT.

This appeal is from a conviction for murder of the first degree, wherein the penalty is assessed at death.

Dr. G. B. Foscue testified, that about 2 o'clock on the morning of the 20th day of January, 1894, he was called to attend Mr. and Mrs. Lipschitz, at the corner of Tenth and Ross streets, Waco, McLennan County, Texas; that when he reached the house he found Mr. Lipschitz lying on the floor of the dining room; that he found a large wound on the right side of his head, rather to the rear; the skull was crushed in, and the bone so crushed was entirely separated from the surrounding bones; that the wound appeared to be made with a blunt instrument; that the wound was a fatal one, death ensuing within a few hours; that there was blood over a large part of the floor, and

on a table located a few feet from his head. The blood would not spurt from the wound. Minor Moore and Leslie Shumway came after him. "I also found Mrs. Lipschitz suffering from a wound on the right side of her head; she was lying in bed in her bedroom; the bed was situated in the corner of room, with the head of the bed against the southwest wall of the room. Her wound was bleeding freely. She was conscious when I got there, but soon after became unconscious. She had a miscarriage that night, caused from the shock from the wound. The wound, I think, was made with a blunt instrument. The wound was on the front part of the head, on the right side. She has since died from the effect of the wound."

George Wilson testified, on direct examination, that he came to Waco on the evening of January 17, 1894. Met with defendant, Burl Radford, on Thursday, the morning of the 18th; that Burl asked him if he had any work, and being answered "No," said, "Come with me; I am to have work at Taylor as cook, and I'll get you a job too." They remained together that day, slept together that night in a cattle car on the Missouri, Kansas & Texas Railroad track near the cattle pen; that they were together all of the next day. At about 12:30 p. m. they went to Mrs. Kincaid's; remained about three hours; went thence to the river; thence to Miller Moore's on South Tenth street, within sight of Lipschitz's store, and diagonally across the street from Lipschitz's store; thence to Katy depot, and thence to Austin street. After talking to a man there went to the Suspension bridge, thence to the Katy depot, thence to cattle car, arriving there about 8:30 p. m. While at the car defendant told me he knew where we could make a haul that night. At 11:30 p. m. or 12 o'clock they left the cattle car and proceeded to the cotton yard on the corner of Webster and South Eighth streets, which is about five blocks from Lipschitz's house. They remained there until 1 or 1:30 a. m. They then went to Lipschitz's store, corner of Tenth and Ross streets. Burl looked one way and he another, but they saw no one in sight. Burl stationed me at the gate on Ross street. Burl went on the gallery and into the house. Witness heard some one walking, a dull thud, and a scream. Burl came immediately out, and said, "I've done it, but don't you ever breathe it; and we must get away from here;" and they returned to the cattle car in a run, going along the east side of Tenth street towards the Missouri, Kansas & Texas Railroad. Burl was ahead of me; witness slept no more that night; they talked none; a freight train passed, and Burl, on being asked to fly, said, "I won't leave; I haven't done anything." That next morning they went to Mrs. Kincaid's, and they returned to the cattle car, where they were arrested for vagrancy, near noon on Saturday morning, January 20, 1894. Burl Radford is left-handed. His right hand is withered, and has three fingers drawn up to the palm of the hand. It began to rain soon after we left Lip-

schitz's house after the murder. I stood at the back gate while Burl went into the house. The gate was about five feet from the gallery leading into the room Burl entered. He entered the room through the door on the back gallery fronting Ross avenue.

Cross-examined: "Left the cattle car on January 19th; went to the cotton yard; walked just behind Burl. It was a moonlight night. We laid no plans. Didn't see Burl have any weapon; didn't see him pick up any; was right beside him all the time after leaving the car; didn't meet any one. I was at the gate, and Burl was in the house about one minute. Didn't see any weapon when he came out; it was dark. We ran away along Tenth street. Didn't ask what was done; didn't talk about it after we returned to the car. I only asked him if he got anything, and he answered, 'No.' Burl said, 'I won't leave; I haven't done anything.' I have made contradictory statements about the murder, but have not made contradictory statements since I testified on the habeas corpus trial. I am telling the truth now. I was afraid to tell the truth about it at first. I first made a statement before the county attorney, in the guard room. I told the county attorney that I was afraid of being mobbed, and he said I had better tell the truth, or a rope would be around my neck. He said he would protect me and defend me. I don't know whether I will be prosecuted or not; the county attorney made me no promise about that. I was told by the county attorney to testify against Burl Radford and I would not be prosecuted. I agreed to testify against Burl Radford. I am not in the habit of sleeping in box-cars with negroes. The county attorney told me to tell the truth."

By several other witnesses it was shown, that defendant and George Wilson were seen the afternoon before the murder in the neighborhood of the house where it occurred.

William Wood testified, that on the night of the killing, at 12:27 a. m., he saw the defendant within four blocks of Lipschitz's store; that he was motorman on a railway line; was returning home after putting up his car. Defendant asked him for the time; he looked at his watch, and told him.

Sam Hall testified: "I saw Mr. Lipschitz on Friday night after the murder. There was a large wound on the right side of his head, well towards the back of it. It seemed two blows had been struck. I arrested George Wilson and Burl Radford, near noon of Saturday, for vagrancy. I was a policeman in the city of Waco, and had been investigating the case. I searched Burl and found on him a key. [Here the key was identified and offered in evidence as being the one found by witness.] I fitted the key to the lock of the door leading from the dining room to the back gallery on Ross avenue, and found it locked and unlocked it readily. It would fit no other door in the house. I made diligent search, but found no key in the house that would fit the door. The

rain came up just before I got there, and obliterated the tracks. The killing occurred in McLennan County, and State of Texas."

Cross-examined: "At the time I found the key I did not regard it as suspicious, and did not ask and seek for any explanation at that time. After I found it fitted the door I spoke to Burl about it, and he gave me an explanation. [The court refused to allow explanation given.] This was the first time I had challenged his possession. I did not look in the bureau or stand drawers for a key to fit the door. There was blood in the kitchen, sitting room, and dining room, and on the floor, doors, tables, bed, and curtains, and on the gate leading to Ross avenue. The windows in front of the store on Tenth street are closed by shutters. One of the shutters on the window nearest to Ross avenue and facing Tenth street had the screws removed from the lower hinge. From appearances it seemed the screws had been recently withdrawn. Made diligent search for screws, but found none. One pane of glass had been removed from a window on same side the shutter had been unloosed. I made search for instruments by which the crime might have been committed, but found none. The key was a common key, and the lock a common one. Many keys might fit the lock, and this key might fit many locks."

F. A. Shumway testified: "I live at 708 South Tenth street. On the night of the killing Mrs. Lipschitz came to my door about 2 o'clock and said some one had killed or was killing her husband. I sent my son and Mina Moore for a doctor. I was the first one to reach the scene of the murder. There was no sign of a struggle. Mr. Lipschitz was lying near the door leading out on the gallery fronting Ross avenue, on his face, with his hands under him. There was a wound on right side of head, towards the rear portion. Mrs. Lipschitz was sitting near her husband, and until our attention was called to it we did not know she was injured, although she was covered with blood. Mrs. Moore and Dowdy put her to bed."

Cross-examined: "Mrs. Lipschitz had a shawl on her head covering her wounds. There was blood on the sitting room and kitchen floor, on the door going from the kitchen to the rear yard, on the door leading from the sitting room to the gallery on Ross avenue, on the table in sitting room, on the gate, and on my gate and my door. There was a lamp in the room, but no blood on it. The door from the sitting room to the gallery was open. One shutter on the window on Tenth street had the screws removed from the hinge; the string which usually fastened it was broken, and the shutters pulled back and opened. The shutter was fastened at the top by a top hinge, and the window was down, but could have been raised from without. The door leading from the store to the back gallery which faced Ross avenue was usually kept bolted on the inside by Mr. Lipschitz. I found it unbolted, and could enter the store from the gallery. The door could not be un-

bolted from the outside. The door between the store and the bedroom was locked. A slide window opening out from the side room of the kitchen was open."

Mrs. Freeman testified: "I attended on Mrs. Lipschitz during her last illness. Mrs. Lipschitz said she was going to die, and spoke of having a shroud made. I asked Mrs. Lipschitz to tell about it. She said, 'It is he; he was a colored man—not white, not black. When he came to the door I heard the word money, and then the blow. The man brought to me by the officers looked like the same man.' This conversation occurred about three weeks after the murder. I know the key. [Here the bunch of keys was handed witness, and she picked out from the others the key identified by witness Sam Hall as the key he found in defendant's pocket the day he was arrested.] I have seen it frequently in the Lipschitz door. It is the Lipschitz key. I was well acquainted with Mr. and Mrs. Lipschitz, and visited them frequently. I looked for the key the next morning after the killing, but could not find it."

Cross-examined: "Never saw the key out of the door; never examined it critically; saw it in the door frequently, and a few days before the murder. Never saw it since the murder until now. I know it is the same key I saw in the door at Lipschitz's. It was in the door leading out on the back gallery fronting Ross avenue."

For the defendant several witnesses testified, that Mrs. Lipschitz, after she was wounded, but when perfectly rational, had stated that she did not know who had committed the deed, nor whether he was white or black; that she did not see him.

Henry Wilson, for the defendant, testified: "I live in Dallas. I rent rooms there. I saw Burl Radford there last December. He rented a room from me, and I furnished him a key to it. When he left he never returned the key. [Key shown him.] Don't know whether that is the key; wouldn't testify to any key, but it looks like it."

Cross-examined: "Don't know whether he had the key when he left Dallas."

*J. B. Yantis, O. C. Depew,* and *Kingsbury & Kingsbury,* for appellant. —1. An indictment which charges murder with malice aforethought alone, does not charge murder in the perpetration or the attempted perpetration of robbery or burglary.

While this same question has been several times before this court, still we believe that the question has never been met except in the case of The State v. Roach, 8 Texas Criminal Appeals, 479, and in the case of The State v. Sharpe, 17 Texas Criminal Appeals, 486, in each of which cases it was decided contrary to what we believe to be the correct law. We earnestly believe that the question has never been decided in the light of that reason which discovers and follows principle.

If those decisions are not correct in principle, as we most respectfully submit that they are not, then this honorable court should so expressly decide.    Precedent should never blind us to principle.

2.  The court erred in permitting the State's witness, Mrs. Freeman, to testify, over defendant's objections, to the dying declarations of Mrs. Lippe Lipschitz, to the effect that she saw Burl Radford strike her, and knew him when she again saw him, when shown her by the policeman Sam Hall, after the homicide.

The indictment charged the appellant with the murder of Lippe Lipschitz, and hence the dying declarations of Mrs. Lippe Lipschitz, wife of deceased, were not admissible, since it is well established, not only by our statute law and by the decisions of our highest courts, but even by the old common law, that dying declarations are admissible only in cases where the death of the deceased is the subject of inquiry.    The dying declarations of third parties are never admissible. Such testimony is hearsay of the most offensive kind.

In addition to the dying declarations of Mrs. Lipschitz being the declaration of a third party, no proper predicate was laid for its introduction.    Code Crim. Proc., art. 748; Krebs v. The State, 3 Texas Crim. App., 348; Whart. on Homicide, sec. 746; The State v. Westfall, 49 Iowa, 328; The State v. Fitzhugh, 2 Ore., 227; The State v. Bohan, 15 Kan., 407; Hackett v. The People, 54 Barb., 370; Brown v. The Commonwealth, 73 Pa. St., 321; Hudson v. The State, 3 Coldw. (Tenn.), 355.

3.  The court erred in refusing to allow the State's witness, Sam Hall, the policeman who arrested appellant and found in his possession a door key which fitted the lock of the door leading into the room where Lippe Lipschitz was murdered, to testify, that appellant explained his possession of the key by saying that it belonged to Henry Wilson, from whom he had rented a room in Dallas, and did not return the key.    This explanation was made when appellant's right of possession was first challenged.    That this explanation was reasonable and probably true, see testimony of Henry Wilson.    Whart. on Homicide, secs. 748, 749; Taylor v. The State, 15 Texas Crim. App., 356; Castello v. The State, 15 Texas Crim. App., 551; Howell v. The State, 16 Texas Crim. App., 93; Ross v. The State, 16 Texas Crim. App., 554; Anderson v. The State, 11 Texas Crim. App., 576.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Murder of the first degree, with the death penalty.    The indictment charged the murder of Lippe Lipschitz.    Mr. and Mrs. Lipschitz were wounded on the same night and in the same building.    Both died from the effects of the wounds.    The State proposed to prove by the witness Mrs. Freeman, that about three

weeks after the murder of Lippe Lipschitz, Mrs. Lipschitz spoke of dying, and said she knew that she must die. Speaking of the murderer of her husband, she said that he was a negro man; that he was neither white nor black, rather tall; and that the negro taken into her presence by the officer looked like the same man. Objection was made to this testimony, on the ground that the dying declaration of Mrs. Lipschitz was hearsay, and inadmissible for any purpose; that defendant was not on trial for the murder of Mrs. Lipschitz, and her declaration was that of a third party. The objection was overruled, and the evidence admitted. This matter is presented here for revision by a proper bill. Our statute provides, that "the dying declaration of a deceased person may be offered in evidence either for or against a defendant charged with the homicide of such deceased person." Code Crim. Proc., art. 748. This statute settles the question against the admission of the dying declarations of Mrs. Lipschitz. We will, however, add some common law authorities: 3 Russ. Crimes, 5 ed., 359; Rex v. Tinckler, 1 East P. C., 354. See also Brown v. The Commonwealth, 73 Pa. St., 321; The State v. Bohan, 15 Kan., 407; Krebs v. The State, 3 Texas Crim. App., 348.

On the morning after the murder, the officers had orders to arrest and detain all the idle persons in the city. Defendant was arrested by Policeman Hall, and in his possession was found a door key, which the officer tried in the door of the Lipschitz house, leading into the room where Lipschitz was murdered. The key fitted the lock on said door, and would lock it easily. The officer looked around the house, and could not find any other key that would fit the lock in said door. This being in evidence, defendant's counsel asked the witness if, when he found the key would fit the Lipschitz door, and when defendant was first afterwards charged with the murder, he did not mention to the defendant the fact that the key fitted the door lock, and if he did not ask defendant how he came to have said key, and if defendant did not then and there say "that the key was the property of one Henry Wilson, who lived in Dallas city, and that he had rented a room in Dallas from said Wilson in December, 1893, who furnished him a key to said room, and that the key found by Hall in his possession was the same key, and that when he left Dallas he carried the key off with him." The State objected, and the objection was sustained and the evidence excluded. We are of opinion that the explanation of appellant as to his possession of the key was admissible evidence.

The same witness, Hall, was permitted to testify, that he took the defendant out of jail down to the Lipschitz residence, and into the presence of Mrs. Lipschitz. Objection was made by defendant, on the ground that it was compelling defendant to testify against himself, through his acts, while under arrest. The objection was overruled. As the declarations of Mrs. Lipschitz are not admissible, this matter

will not be presented on another trial. The indictment simply charged that the murder was with malice aforethought. The court charged the jury upon murder, upon express malice aforethought, and also upon murder committed in the perpetration or attempted perpetration of robbery and burglary. It is contended for appellant, that thus he has been indicted for one species of murder, and was tried for another and different kind of murder. The proposition is, that if the State, to show murder in the first degree, relies upon the fact that the homicide was committed in the attempted perpetration of robbery or burglary, that the indictment must so charge. The writer thinks that the proposition is correct, but the decisions of this court have settled the question the other way.

For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.