## THE STATE OF KANSAS V. JAMES RHEA.

1. ASSAULT WITH INTENT TO KILL; *Continuance, Properly Refused.* The defendant was arrested on July 15th, on a charge of shooting with intent to kill, and bound over to await trial. The first regular term of court thereafter in Morris county, the county in which the offense was charged to have been committed, commenced October 25th. The information was filed October 22d, and the case placed by the clerk on the trial docket for October 25th, the first day of the term. On October 20th, defendant caused a subpena to be issued for several witnesses in Leavenworth county, which subpena was returned by the sheriff of that county served upon one and only one witness. Want of time prevented service on the others. On October 25th, defendant applied for a commission to take testimony in Leavenworth county. No suggestion was made of the inability of the witnesses to attend the trial on account of sickness or otherwise. Their testimony was sought simply to show defendant's character as a quiet and peaceable citizen. The application was overruled. Defendant then filed an application for a continuance, on account of the absence of these witnesses, and also on account of the absence of a witness who he said resided in Morris county, but was temporarily absent, and for whom he had caused a subpena to be issued on October 25th. The state consenting that the statements in his affidavit should be received as the testimony of these absent witnesses, the application was overruled. *Held,* That the defendant had had ample time to secure his testimony, and that there was no error in overruling these applications for commission and continuance; that a case is triable at the first term of the district court after the arrest; and that both state and defendant are charged with the duty of making preparations for such trial.

2. CHANGE OF VENUE, *Rightly Refused.* On an application for a change of venue, some six or seven newspaper articles were offered containing statements of facts similar to those disclosed by the state on the trial, and denouncing in strong and severe language the defendant; also the affidavit of a single witness, that he was one of the party engaged in the search for defendant immediately after the shooting, and that he heard

bitter and threatening language in every direction against him. Opposed, were the affidavits of twenty-one citizens from different parts of the county denying any general prejudice, or any feeling which would prevent a fair trial. It was not shown that there was any difficulty in obtaining a jury, or any reason to suspect the candor and fairness of the jurors impanneled. *Held*, That the judgment ought not to be set aside because of the refusal to grant a change of venue.

3. ——— *No Error*. The information charged an offense under § 38 of the crimes act. Defendant claimed that included therein were the offenses described in §§ 41, 42, 43, and that the court in its instructions should have explained those offenses. The charge to the jury is not challenged so far as it goes. The complaint is that it did not go further. But it does not appear that any instruction asked was refused, nor is it shown that all the instructions given are preserved in the record. Hence, even if defendant's construction of the information and statutes were correct, his claim of error must fail.

4. NEW TRIAL, *Properly Denied*. On a motion for a new trial, defendant offered the affidavits of two of the jurors, showing that upon consultation in the jury room it appeared that a majority were in favor of returning the verdict finally returned, and a minority opposed thereto — though what verdict such minority was in favor of was not shown; that a compromise was agreed upon, whereby the verdict was agreed to by all and returned with an unanimous recommendation of the defendant to the mercy of the court. *Held*, No error in overruling this motion for a new trial.

### *Appeal from Morris District Court.*

INFORMATION against *James Rhea*, for shooting and wounding with intent to kill C. F. Jenkins, in the county of Morris, on or about the 5th day of July, 1880. The defendant was convicted at the October Term, 1880, of the district court, and sentenced to the penitentiary for a term of four years. From this sentence he appeals. The opinion states the facts.

*Ed. S. Waterbury*, for appellant.

*J. M. Miller*, county attorney, for The State.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted under § 38 of the crimes act of shooting one C. F. Jenkins with intent to kill, and sentenced to the penitentiary for a term of four years. From such sentence he has brought this appeal. The first

37 — 25 KAS.

error, or perhaps more correctly group of errors, alleged, is in respect to the overruling of certain applications for delay and continuance. In respect to these matters, the facts are that the offense was committed July 5th, the defendant was arrested July 15th, and committed to jail for want of bail. Court convened October 25th, and the case was set for trial upon that day. Intermediate these dates, an application for *habeas corpus* had been heard, and the bail reduced from $3,000 to $1,500. The offense was committed and trial had in Morris county. On October 20th, a subpena was issued for certain witnesses to the sheriff of Leavenworth county, which was returned as served upon one of the witnesses, and not served upon the others for want of time. On October 22d, the information was filed. On October 25th, at the opening of court, defendant made application for a commission to examine witnesses in Leavenworth county. This was overruled. He then made application for a continuance on account of the absence of certain testimony. This was overruled, the state consenting that the affidavit therefor should be treated as the deposition of such absent witnesses. He also sought for other delays, but they were not granted, and on the 26th the trial was had. The testimony sought from Leavenworth county by deposition was as to his character as a peaceable and quiet citizen. The testimony of no witness outside the state was sought. Now without going further into the detail of these matters, we remark that the law gave to defendant the right to compulsory process for his witnesses, residing anywhere within the state, at any time after his arrest and commitment in July. He was under no obligation to wait until the information was filed, or the trial court in session. Terms of court are fixed by law. In most counties in this state they come but twice a year. Any criminal charge is triable at the first term after the arrest. The state and the defendant are equally chargeable with notice of this, and must prepare for trial accordingly. Process runs to all parts of the state. If either the state or the defendant waits until the last moment before preparing for trial, the omission is not the fault of the

law or the court, and any ill result is fairly chargeable to the party guilty of the omission.    While this defendant was in custody for over three months, it does not appear that he made any effort to get ready for trial until five days before court met.    Then he ordered a subpena to a distant county.    A delay to that time was fatal to his rights.    Diligence alone makes a continuance compulsory.

Further, continuances are largely within the discretion of the trial court; and before error can be affirmed, it must be shown that such discretion has been abused.    It is not enough that conditions and circumstances are shown which would justify a postponement; there must be those which compel such postponement.    Any uncertainty or doubt in this respect must be resolved in favor of the ruling below.    Abuse of discretion is never presumed; it must be proved.

And finally, it appears that the state consented that the testimony sought should be received as the deposition of the absent witnesses.    (*Thompson v. The State,* 5 Kas. 159; *The State v. Dickson,* 6 Kas. 209; *The State v. White,* 17 Kas. 491.) There is nothing in the rulings concerning continuances and postponements which compels a reversal.

The second matter for consideration is, the overruling of an application for a change of venue.    In this too the ruling must be sustained.    The showing made was this: An affidavit containing sundry newspaper notices in the papers of the county, and also an affidavit of John A. Barker, one of the parties engaged in the search for defendant after the shooting, as to expressions of the public against him, and as to public opinion as he found it.    Opposed were the affidavits of twenty-one persons, citizens of different townships in the county, as to the absence of any feeling sufficient to prejudice the case of defendant or to prevent a fair trial.    These newspaper articles were statements of facts—facts it may be only on one side, and yet of facts as they actually existed, coupled with strong condemnation of the conduct of defendant.    It is clear that on the morning of the 5th of July the prosecuting witness and the defendant met and had a quarrel; that there-

upon defendant went immediately to Council Grove, a distance of eight or ten miles, purchased a pistol, had it put in good working order, and returning home met the prosecuting witness on his way to his own pasture, and shot him. Upon these facts, the conduct of defendant was denounced, and rightly denounced. The matter of self-defense, which defendant pleaded, was not stated or considered. All that then appeared was the statement of the prosecuting witness. That disclosed a wicked and unjustifiable shooting. Such a shooting was properly denounced. But it does not follow because of such *ex parte* statements that no jury would give due weight to any explanations made by defendant, or to his excuse of self-defense. The defendant fled immediately after the shooting. His version of the transaction was not heard. The papers told the story as the prosecuting witness gave it. Upon such story they denounced defendant's conduct. Such denunciation the facts then known not only justified, but deserved. But a general feeling of prejudice was denied by twenty-one and affirmed by only one witness. A jury was impanneled. No difficulty in securing jurors is shown. No suspicion is cast upon the good faith of any juror; no imputation of bias or prejudice. The facts as detailed by the prosecuting witness and defendant were so detailed that different minds might well come to different conclusions as to the conduct of defendant; and by the affidavit furnished by defendant on the motion for a new trial, it appears that the jury were divided in opinion, and finally compromised on a verdict of guilty with a recommendation to mercy. As we read the account of the transaction as given by defendant, we cannot forbear remarking that there is an appearance of candor which impresses us favorably; and yet by his own story his conduct cannot be approved. The prosecuting witness made an unwarranted assault upon him in the morning, and threatened further violence; yet instead of appealing to the courts for the protection which would promptly have been given him, he hurried off to town and armed himself with a deadly weapon, and used it at their first meeting. Fortunately, the

shot which he fired did not result in death; but it was none
the less an unnecessary and unwarranted act of violence, and
one which deserves punishment in a community where the
law is in force and courts open to every aggrieved and threat-
ened party.    Self-defense needs no such resort to the pistol.

The information was filed under § 38 of the crimes act, and
charged an assault with intent to kill and murder.    Counsel
for appellant contends that defendant might under such an
information be convicted of an assault with intent to commit
manslaughter or some other felony, as provided in §§ 41, 42
and 43, and that therefore the court erred in not instructing
as to those sections.    Concede all that counsel claims, and
still the allegation of error cannot be sustained.    It does not
appear that any instruction asked was refused, or that all the
instructions given have been preserved.    The record contains
a charge to the jury.    No error is pointed out in that.    And
the record does not show that this charge contained all the
instructions given.    It may be the court gave at defendant's
request instructions covering all the matters now suggested;
we cannot presume that there was any omission.    But again,
the jury found the defendant guilty of the full offense charged,
and ordinarily in such a case any error in the instructions
concerning a less offense will be immaterial. (*The State v.
Dickson*, 6 Kas. 209.)    And again, instructions should run to
the facts as detailed, and to all probable interpretations of
them, but not to questions which, though possible under the
information, are not in fact presented by the testimony.    It
cannot be adjudged that there was error in this case in the
matter of the instructions.    On a motion for a new trial the
affidavits of certain of the jurors were offered, tending to show
that upon consultation in their room it appeared that the
larger part of the jury favored the verdict finally returned,
while a smaller number was opposed to it, and that a com-
promise was agreed upon by which the verdict and a unani-
mous recommendation to mercy were returned.    Conceding
that this is a matter in respect to which the affidavits of jurors
are admissible in impeachment of their verdict—yet this is

doubtful; (*Perry v. Bailey*, 12 Kas. 539)—and still we think the verdict must be sustained. It does not show a verdict reached by lot or chance, or one to which the assent of the entire jury was not given. The condition was in fact complied with. The recommendation to mercy was signed by all, and all assented to the verdict upon that basis. It does not appear that any were in favor of acquitting the defendant of all guilt, but simply that all did not favor the verdict prepared by the majority. The most that can be said is, that there was a difference as to the degree of guilt; and yet they all assented to it. And where there was no chance, or lot, or artifice, or bribery, or threat, a juror may not be heard to say why he assented. It often happens that a jury on retiring to consider of its verdict, finds its members disagreeing as to the degree of a defendant's guilt, and finally reaches a verdict by yielding on one side or the other. In one sense the verdict is a compromise, but where no undue influence is shown, and no reaching of the result by lot, or chance, or stratagem, the verdict must stand.

No other question appears in the case. We are satisfied from the record that the defendant was fairly tried, and that the verdict of guilty must be upheld.

The judgment will be affirmed.

All the Justices concurring.