No. 30,897.

THE STATE OF KANSAS, *Appellee,* v. J. LUTHER TAYLOR, *Appellant.*

(20 P. 2d 628.)

Opinion filed April 8, 1933.

*James A. Allen, B. M. Dunham,* both of Chanute, and *B. W. Weir,* of Pittsburg, for the appellant.

*Roland Boynton,* attorney-general, *Robert S. Lemon,* county attorney, and *C. S. Denison,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: J. Luther Taylor was convicted upon a charge of embezzlement, and appeals.

In 1903 the defendant organized the Pittsburg Mortgage Investment Company and carried on the farm-loan business at Pittsburg and in neighboring states, taking many mortgages from borrowers and selling the same to investors until May, 1931, when the business affairs of the company passed into the hands of a receiver, with the consent of the defendant. From the organization of the investment company until it became bankrupt in August, 1931, the defendant owned the majority of the stock in the company, and actually directed and controlled its business, supervising the manner in which its books were kept and directing the correspondence with investors to whom he had sold bonds. He undertook to collect the interest and principal on bonds sold by him to investors as they became due on the loans and to remit the money, when paid, to the investors. These funds, when received, were not kept apart as trust funds but were deposited in a bank to the credit of the company in a common and single account, intermingled with other funds and checked out for all the purposes of the business. When an investor named Richard Johnson learned that mortgages owned by him had been paid sometime before and sought to obtain payment from defendant, defendant acknowledged that payments had been made at different times and had gone into the Pittsburg Mortgage Investment Company funds, had been checked out, and that the company was broke.

The prosecution followed, in which the jury found the defendant guilty, and the sentence was to hard labor in the state penitentiary for not less than one year nor more than five years.

In his appeal he assigns a number of errors, and the first one argued is the denial of his motion for a change of venue. This application was based on the ground of prejudice existing against him in Crawford county, which constituted the judicial district. Testimony was offered by affidavits to the effect that the defendant, as president and manager of the company, in the course of twenty-eight years had foreclosed a great many mortgages in different parts of the county and had incurred the ill will of many people; also, that two investment companies carrying on a similar business had failed

a short time before the prosecution, and a great number of the citizens of the county suffered losses thereby, and that these enhanced the prejudice against the defendant, whose failure occurred near the same time, and witnesses testified that it would be impossible to have a fair and impartial trial of the defendant in the county. Two banks of the county had also failed a short time before the prosecution, and these failures intensified the prejudice against defendant.

Again, it was stated that defendant was a large landowner in the county, had been active in promoting the building of public cement roads near his lands with the result that defendant had incurred the ill will of others not so fortunate in securing locations, and the roads were even called the Taylor roads. There was much unfavorable comment expressed throughout the county against defendant.

It was further alleged that defendant and his sister had been involved in hotly contested litigation in the county as to the interest of each in the estates of their father and mother. This litigation had attracted general attention—people taking sides, one way or the other—and had caused bitter feeling among many of the inhabitants against defendant.

Another ground advanced is that the defendant had sponsored the education of Chinese boys in the schools at Pittsburg, and in the summer time had these boys do repair work on some of his property, which brought opposition of labor unions, one of which printed and distributed pamphlets denouncing defendant and accusing him of "coolinizing" American labor, and aroused strong feeling and prejudice against him. The county is largely an industrial one, and it is stated by witnesses that a great many of the people are members of labor unions and are strongly prejudiced against the defendant on the ground stated.

In support of his verified motion for a change of venue the defendant presented the affidavits of thirty-one citizens of the different townships, communities and cities of the county, alleging that prejudices existed against the defendant to such an extent that he could not have a fair and impartial trial in the county. The affidavits were from persons of almost every avocation, including doctors, farmers, merchants, state senator, state representative, former county commissioner, members of school board, postmaster, rural mail carrier, justice of the peace, and secretary of Masonic bodies. These were people who had an opportunity to know the public opinion of the people as to the defendant and of the existence of

prejudice against him, and expressed the opinion that the defendant could not have a fair and impartial trial in Crawford county.

On behalf of the prosecution seventeen affidavits of citizens testified that they believed the defendant could have a fair and impartial trial in Crawford county. Most of these affidavits were formal in character without stating the specific grounds of their belief. Attention is called to the fact that the affidavits filed by the state were all from the city of Pittsburg, except two of them.

The court after the presentation of the affidavits and the arguments of the counsel on the application, took the matter under advisement until the following day. During the evening the court, on its own motion, prepared a list of one hundred persons residing in the city of Pittsburg and undertook to communicate with them by telephone on the question involved in the motion, the judge saying:

"I am going to ask you a question in the strictest confidence for my own information only. Your name will not be used in any way or revealed to any other person. Mr. J. Luther Taylor is asking to have his case sent to another county for trial on the ground that he believes that he cannot get a fair and impartial jury to try his case in this county. The question I want to ask you is: 'Do you think that a fair and impartial jury can be obtained in this county for the purpose of trying Mr. Taylor?' "

The judge states that seventy-three of the one hundred citizens so selected answered the question, and of these fifty-one answered in the affirmative and twenty-two in the negative. The court stated to counsel that this information was used in connection with the affidavits in passing on the motion for a change of venue, which was denied.

In impaneling the jury five persons were excused for cause and nine were eliminated by peremptory challenges, the defendant using all the peremptory challenges which the statute allows. It is contended that the denial of the motion was error, and especially in the taking of the private and confidential testimony by the court on which its judgment was in part based. It is argued that a strong showing of prejudice was established by the proof of the defendant. This was shown by sworn evidence open to be controverted by the state by producing counter affidavits, and pointing out any weaknesses in the defendant's proof by argument. Either party was at liberty to call attention to the fact that an affiant had much or little opportunity to know the state of mind of the public throughout the

county as to prejudice against the defendant, and the court could be aided by argument showing that the affiants were relatives or partisans of the prosecution or of the defendant, and that little weight should be given to their testimony. This·can be shown where the affidavits are presented, the affiants for both parties identified and their statements analyzed and tested by counsel on each side. How could the defendant test the truth or weight of the evidence of witnesses privately called on the telephone by the judge who asked them to tell him in strictest confidence their opinion as to whether defendant could have a fair and impartial trial in the county?

The granting or refusing of a change of venue was a judicial question of importance and should have been presented and determined in an open and judicial way. It was to be decided on proof that was available, to be sifted and tested by the defendant in open court, and not on statements of persons not sworn but given in the strictest confidence under the assurance that their names would not be made known or revealed to any other person. The defendant could not even learn the names of these expert witnesses who expressed opinions to the judge—could not learn whether they were intelligent, had opportunity of ascertaining public sentiment on the question and were capable of drawing reasonable inferences· from what they had heard or seen. Experts should be sworn to be qualified before their testimony can be received. The mere fact that they assume to be experts does not warrant the reception of their opinions, and who can tell that the opinions given by them were not mere guesses. Yet these opinions were taken into consideration by the court in determining the right of defendant to a change of venue and to have a trial in a district free from the prejudice alleged to exist against him in .the district where the prosecution was pending.

The statute provides that a defendant is entitled to a change of venue where the minds of the inhabitants of a county are so prejudiced against him that a fair trial cannot be had, and the question is to be determined as provided in a later section of the criminal code. (R. S. 62-1318.) The procedure and the kind of proof to be applied on an application of that kind is set forth in a later section, namely, R. S. 62-1321:

"In the petition for a change of venue the applicant shall set forth the facts upon which the application is made, and the truth of the allegations in the

petition shall be made to appear, by affidavits, to the satisfaction of the court. Notice of such application must be given to the county attorney, who may resist such application by counter affidavits."

So we see that the decision of the court is to be based upon affidavits and counter affidavits. The proof is to be made under the sanctity of an oath, not upon mere street talk or unsworn statements of unidentified people whose names are not to be revealed to anyone. The court could have determined the application upon the affidavits presented if the proof satisfied it that it should be granted or refused on that proof. Its decision, in view of the large discretion vested in the court, might have been controlling. However, it appears that the court was not satisfied with the proof offered in the affidavits and it undertook to get additional proof in the unjudicial way mentioned and of a kind not authorized by the statute, and on these added statements the court reached a conclusion.

The state calls attention to the following provision as justifying the court in basing his decision on the views he obtained from persons over a telephone:

"Whenever it shall be within the knowledge of a court or judge that facts exist which would entitle a defendant to the removal of any criminal cause on his application, such judge or court may make an order for such removal without any application by the party for that purpose." (R. S. 62-1322.)

That section has application in certain cases as, for instance, where a judge has been of counsel in the case, or by reason of his relationship to the defendant, or as a material witness in the case, or where all parties are in agreement that such prejudice exists in a county against the defendant that a change of the place of trial must be granted as a matter of course. But it will be noted that this is confined to the granting of a change without an application and does not provide that the court may refuse an application in this off-hand way. When there is an application which is contested, the statutory method of ascertaining the truth of the allegations in the petition must be followed. The truth of the allegations must be determined on the proof prescribed by statute, and that is upon affidavits. It must be held that the procedure taken by the court was obvious error and therefore the judgment must be reversed.

There is a complaint that a motion to quash the information should have been sustained. An examination of the averments in the information satisfies us that it is sufficient to charge embezzlement.

Another complaint is made that there was error in permitting the state to amend the information after the defendant had entered his plea of not guilty. The amendment, it appears, was the striking out of an averment in the charge and the correction of a date and the word "a," which we think could not have operated to the prejudice of the defendant and did not furnish cause for a continuance of the case.

In view of the fact that the case is to be retried, we will not review the claim that the evidence was insufficient to sustain a conviction. That question will be determined on testimony produced in the new trial and not on that taken on the first trial wherein the error was committed on the motion for a change of venue before any evidence was submitted. For the error mentioned, the judgment is reversed and the cause remanded for a new trial.