No. 35,592

THE STATE OF KANSAS, ex rel. JAY S. PARKER, Attorney General, and CLAYTON BRENNER, County Attorney of Johnson County, *Plaintiff*, v. G. A. ROBERDS, *Defendant*.

Nos. 35,593 and 35,594

THE STATE OF KANSAS, *Appellant*, v. FRANK D. HEDRICK, JR., *Appellee*.

Nos. 35,595 and 35,596

THE STATE OF KANSAS, *Appellant*, v. FRANK D. HEDRICK, SR., *Appellee*.

Nos. 35,598 and 35,599

THE STATE OF KANSAS, *Appellee*, v. FRANK D. HEDRICK, JR., *Appellant*.

Nos. 35,600 and 35,601

THE STATE OF KANSAS, *Appellee*, v. FRANK T. DUGAN, *Defendant*, FRANK D. HEDRICK, SR., *Appellant*.

(123 P. 2d 806)

filed March 24, 1942.

In No. 35,592, *Jay S. Parker,* attorney general, *A. B. Mitchell* and *Guy Ward,* assistant attorneys general, and *Clayton Brenner,* county attorney, were on the briefs for the plaintiff; *Garfield A. Roberds,* defendant, submitted his answer, *pro se.*

In the appealed cases, *A. B. Mitchell* and *Guy Ward,* assistant attorneys general, argued the cause, and *J. S. Parker,* attorney general, and *Clayton Brenner,* county attorney, were on the briefs for the plaintiff.

In the appealed cases, *Howard Payne,* of Olathe, and *Edward Rooney,* of Topeka, argued the cause, and *Jacob A. Dickinson* and *Edward Rooney, Jr.,* both of Topeka, were on the briefs for defendants Frank D. Hedrick, Sr., and Frank D. Hedrick, Jr.

The opinion of the court was delivered by

HARVEY, J.: The above cases present different phases of the same general controversy and because of their public importance were advanced and heard together. The pertinent facts shown by the record before us may be stated briefly as follows: The tenth judicial district in this state is composed of the counties of Johnson and Miami, and the duly elected, qualified and acting judge of the court is the Hon. G. A. Roberds. On January 5, 1942, the opening day of the January term of the district court of Johnson county, there were pending in that court four criminal cases for trial or other disposition at that term. In two of the cases informations had been filed charging Frank D. Hedrick, Jr., while holding the office of county attorney of that county (which position he had resigned in September, 1941, as shown by the records of this court), with having feloniously accepted bribes from Frank T. Dugan and Homer Demming, under an agreement by which the county attorney was to permit them to operate gambling devices in Johnson county in violation of law without being interfered with by the prosecuting officers of the county. In two of the cases Frank D. Hedrick, Sr., father of the former county attorney and a practicing lawyer in that court, was charged with acting with Dugan and Demming in giving the bribes and making the unlawful agreement respecting the operation, unmolested, of the gambling devices. Upon the calling of the docket on the opening day of court Judge Roberds set other criminal cases for trial and advised counsel he would confer with them at two o'clock with reference to the Hedrick cases. At that conference

Judge Roberds advised counsel that he planned, on his own motion, to make an order changing the venue in those cases from Johnson county to Shawnee county, which is not in his judicial district nor in an adjoining judicial district, and that the order would be made on January 10. On that day the court made the following order in each of the four cases:

"Whereas, It has become personally known to the undersigned, judge of the tenth judicial [district] court, comprising the district court of Johnson county and the district court of Miami county, that, subsequent to the arrest of the defendant herein, there has followed an unusual and very extensive amount of publicity concerning said defendant and the charges filed against him, which publicity appeared in many issues of the newspapers of said district, and also in the metropolitan newspapers which are extensively distributed and read through said district; that in addition thereto, great interest has been shown and a great amount of discussion had concerning said case throughout said district, and opinions have been freely expressed concerning the same; all to the extent and degree that it appears to the undersigned that the inhabitants of said district are so prejudiced against said defendant that a fair trial cannot be had of this case in said district.

"Therefore, because of said facts which are within the knowledge of the undersigned that such facts do exist which would entitle the defendant to have an application for removal of said cause from said district sustained, had such application been filed herein; that by reason of the personal knowledge of such facts which are possessed by the undersigned; it is by the court ordered, on the court's own motion, that the further hearings and the trial of said cause be transferred from the district court of Johnson county, Kansas, to the district court of Shawnee county, Kansas, where such prejudice is not alleged to exist.

"It is by the court further ordered that said defendant enter into a recognizance in the sum of $1,000 for his appearance to answer to the charges contained in the information herein filed against him, in the district court of Shawnee county, Kansas."

The transcript of the proceedings disclosed that Frank D. Hedrick, Jr., and Frank D. Hedrick, Sr., were present in person and by their attorneys, and that the state of Kansas was represented by its counsel; that one of the attorneys for defendants, in open court, announced:

"The defendants, Frank D. Hedrick, Sr., and Frank D. Hedrick, Jr., agree to this and waive and do not have any constitutional objections to the transfer from this county to Shawnee county."

Counsel for the state, in open court, objected to the order made by the court and reserved the question on the part of the state on the ground that there is no evidence before the court such as is contemplated by the statute or by our decisions on which such an order

can be made; that no application had been made by defendants for such change of venue, and on the further ground the court has no legal right to make the order under any statute.

The defendants executed the bonds for their appearance in the district court of Shawnee county, as provided by the court's order, whereupon the court set aside bonds defendants previously had given for their appearance in the district court of Johnson county. In compliance with this order the clerk of the district court of Johnson county prepared the necessary papers and certificates and sent them to the clerk of the district court of Shawnee county, where they were received on January 15, 1942. The clerk of the district court of Shawnee county accepted the papers, filed them, and gave them docket numbers. In due time thereafter the judges of the three divisions of the district court of Shawnee county sitting together had a conference with counsel for the state and defendants and their counsel at which there appears to have been an informal discussion as to whether the district court of Shawnee county had jurisdiction of the cases, and if so, how they would be handled. The judges took the matter under advisement and on February 17, 1942, made the following order in each of the cases:

"Now, on this 17th day of February, 1942, there comes on for consideration the jurisdiction of this court to hear and determine this cause on the record of change of venue in the above-entitled case as made by the district court of Johnson county, Kansas. After an examination of the order of transfer and change of venue of said action, we are of the opinion that said order is irregular and not in accordance with the law and confers no jurisdiction upon the district court of Shawnee county, Kansas, to hear and determine said cause, and that said action should be remanded to the district court of Johnson county, Kansas, for further proceedings.

"It is, therefore, considered, ordered, adjudged and decreed that the above-entitled action should be, and the same is, hereby, remanded to the district court of Johnson county, Kansas, and the clerk of this court is hereby directed to transmit a certified copy of this order to the clerk of the district court of Johnson county, Kansas, together with the file and record of this case."

These, and all the papers in the cases, were sent by the clerk of the district court of Shawnee county to the clerk of the district court of Johnson county. Upon their receipt there Judge Roberds advised the clerk of the district court of Johnson county not to redocket the cases, but simply to hold the papers pending further action by the district court of Shawnee county.

The defendants, Frank D. Hedrick, Jr., and Frank D. Hedrick, Sr., appealed from the order of the district court of Shawnee county

remanding the cases to the district court of Johnson county, and their appeals are docketed here as Nos. 35,598, 35,599, 35,600 and 35,601.

On January 20, 1942, counsel for the state filed in the district court of Johnson county a motion that the Hon. G. A. Roberds, judge of that court, disqualify himself as to all matters in the Hedrick cases for reasons stated therein. On January 21, 1942, Judge Roberds made an order striking this motion from the files upon the ground that the court had no jurisdiction over the cause, nor over the defendants, and no jurisdiction to hear and to determine any matter or thing relative to said cause, including said motion. The state reserved the question and appealed from the order of the court striking its motion from the files and holding it had no further jurisdiction. These appeals bear the docket numbers in this court 35,593, 35,594, 35,595 and 35,596.

On February 27, 1942, and before the papers in either of the appeals previously mentioned reached this court the state, on the relation of the attorney general and the county attorney of Johnson county, filed in this court an original proceeding in mandamus against Judge Roberds asking that defendant be directed to withdraw or set aside the order striking the motion filed by the state to disqualify himself and to determine such motion when properly presented, and further directed defendant to disqualify himself for the trial of those cases and certify said disqualification to this court; that the court interpret the pertinent statutes as they apply to the duties of the defendant, and for such other relief as is deemed proper. In his proceeding Judge Roberds, *pro se*, has filed an answer.

Before taking up the mandamus proceeding perhaps it will avoid confusion if we discuss the legal questions presented upon the two groups of appeals, one by defendants from the order of the district court of Shawnee county of February 17, 1942, and the other by the state from the order of the district court of Johnson county of February 21, 1942. In doing so we shall speak of the parties as they appeared in the trial court, the state on the one side and the defendants, meaning both of them, on the other. While each group of appeals includes four cases, two against each of the defendants, there is no purpose in treating the cases separately, since they give rise to the same legal questions; indeed, the two groups of appeals present important legal questions in common.

While not cited in the order of Judge Roberds made on January

10 it is clear from the record as a whole that he made the order under the authority, or supposed authority, of G. S. 1935, 62-1322, which reads:

"Whenever it shall be within the knowledge of a court or judge that facts exist which would entitle a defendant to the removal of any criminal cause on his application, such judge or court may make an order for such removal without any application by the party for that purpose."

Counsel for the state contend this section of our statute is void as being in conflict with that portion of section 10 of our bill of rights, which reads:

"In all prosecutions, the accused shall be allowed . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, . . ."

In the alternative they contend, if the section is not void, that the order made is voidable and should be set aside on the state's motion.

Counsel for defendants argue that (1) the district court of Shawnee county had no power to remand the cases unless the order made by Judge Roberds is absolutely void; (2) that the statute just quoted authorizes the order made, if the defendants consented; and (3) that the order was in all respects regular, and that the court of Johnson county and defendants complied with all statutory prerequisites, including the giving of bonds to appear in the district court of Shawnee county.

These questions are argued from several viewpoints.

Before taking up the specific questions argued some general discussion may be helpful.

Subject to constitutional restrictions, a change of venue is a matter of statutory regulation. (22 C. J. S. 300.)

It has been said: "A change of venue is a wrong to the public, unless the necessities of justice to the defendant require it." (See City of Emporia v. Volmer, 12 Kan. 622, 627; also State v. Stark, 63 Kan. 529, 66 Pac. 243.)

The history of our statutes relating to change of venue in criminal cases is as follows: Our first territorial legislature, 1855, composed largely of former residents of Missouri, enacted as the statutes of the territory of Kansas practically all of what was then the General Statutes of Missouri. Included in those so adopted was chapter 129, article 5, §§ 15 to 39, relating to change of venue in criminal cases. The territorial legislature of 1859 repealed all the laws enacted by the legislature of 1855 (Laws 1859, ch. 89, § 1), but the

same legislature enacted a code of criminal procedure, including the same sections of the statutes of 1855 relating to change of venue (Laws 1859, ch. 27, §§ 150 to 174), and these were carried into General Laws 1862 as chapter 32, and with a few amendments into the General Statutes of 1868, as chapter 82, §§ 172 to 196, and are now G. S. 1935, 62-1316 to 62-1340. For brevity, we shall later refer to them by the section numbers. The action of the legislatures of 1855 and 1859 of adopting or repealing statutes in bulk does not indicate careful consideration of individual sections, and the question of the constitutionality of 62-1322, as we have it here, could not have been considered by the legislature of 1855 or of 1859, for our constitution came into effect later. The Kansas territorial government was functioning under the organic act of May 30, 1854, which did not include section 10 of our bill of rights. Perhaps the sixth amendment of the United States constitution, which contained a similar provision, should have been taken into account; but we pass this thought, since it has not been argued.

Respecting a change of venue in criminal cases, our statute, 62-1316, relates to a situation where the presiding judge is charged with an offense; 62-1317 relates to what shall be done when the presiding judge is near of kin to defendant, or the offense is charged to have been committed against the person or property of the judge or his near of kin, or when the judge is in anywise interested or prejudiced, or shall have been of counsel in the cause. In *State v. Knapp*, 40 Kan. 148, 19 Pac. 728, it was said of this statute as it relates to section 10 of our bill of rights:

"If the statute purporting to authorize a change of venue was intended to permit the state to change the trial against the objection of the accused, it is in conflict with the bill of rights, and therefore void." (p. 150.)

We shall not stop to consider whether this section, 62-1317, is wholly void because its language permits the court to remove the case over the objection of defendant, or of the state, or of both, since that specific question is not before us. Our own research discloses but one of our cases, *In re Edwards*, 35 Kan. 99, 10 Pac. 539, in which the court attempted to act under 62-1317, and perhaps 62-1322, on its own initiative. The court's authority to do so was not involved when the case reached this court, but in stating the history of the case (p. 103) the opinion discloses that the information was filed one day before the beginning of the May, 1885, term of the district court of Sumner county. At the May term, and over the

objection of the state and the defendant, the court made an order removing the case for trial to Cowley county, in another judicial district, upon the ground that the court was disqualified to preside at the trial on account of his prejudice. This order was vacated later upon the motion of the county attorney of Sumner county. We do observe the situations set out in 62-1317 are almost universally recognized in this country as disqualifying a judge to preside over the trial when any of them exist. The importance to litigants and to the public of an unbiased, disinterested presiding judge has been asserted repeatedly by the courts and judicial writers. (See 33 C. J. 988; 15 R. C. L. 530, and Am. Dig., Judges, § 39 *et seq.*) The statute, 62-1317, outlines no procedure to be followed. In part, at least, this action seems to be superseded by a later enactment, G. S. 1935, 20-311a, which provides for the appointment of a judge pro tem in such cases. Following the procedure outlined by the statute, the constitutional rights of the defendant under section 10 of the bill of rights are not disturbed; and since its enactment the statute has been used repeatedly in both civil and criminal cases (see *State v. Stiff*, 148 Kan. 224, 80 P. 2d· 1089), and, as we will later see, is recognized as applicable in the case before us.

Sections 62-1318 to 62-1321 relate to prejudice of inhabitants. They read (italics ours):

"62-1318. Any criminal cause pending in any district court may be removed by the order of such court, or the judge thereof, to the district court of another county in the same district, *whenever it shall appear, in the manner hereinafter provided,* that the minds of the inhabitants of the ·county in which the cause is pending are so prejudiced against the defendant that a fair trial cannot be had therein.

"62-1319. *Whenever it shall appear, in the manner hereinafter provided,* that the inhabitants of the entire district are so prejudiced against the defendant that a fair trial cannot be had therein, the cause shall, by order of the court or judge, be removed to another district, in which such prejudice is not alleged to exist.

"62-1320. *Such order of removal as specified in the two preceding sections shall be made on the application of the defendant;* or, where the defendant is under the age of sixteen, on application of the parent or guardian of such infant; and if the infant has no parent or guardian, then on the application of any two respectable citizens of the county where the cause is at issue.

"62-1321. In the petition for a change of venue the *applicant shall set forth the facts upon which the application is made,* and the truth of the allegations in the petition *shall be made to appear, by affidavits, to the satisfaction of the court. Notice of such application must be given to the county attorney,* who may resist such application by *counter affidavits.*"

These statutes present a definite outline of procedure to be followed in determining whether or not the minds of the inhabitants of a county or district are so prejudiced against defendant that a fair trial cannot be had. It must be done upon the "application of the defendant." (62-1320.) The petition for the change "shall set forth the facts upon which the application is made." Notice must be given to the county attorney, who may resist the application, and the hearing is to be before the court upon affidavit to determine the facts alleged in the application. (62-1321.) That is the only way provided by statute for determining whether the minds of the inhabitants of the county are so prejudiced against defendant that he cannot have a fair trial. It has been the method followed throughout the history of our state, as the following list of cases, not intended to be complete, shows: *State v. Horne,* 9 Kan. 119; *State v. Bohan,* 15 Kan. 407; *State v. Winner,* 17 Kan. 298; *State v. Rhea,* 25 Kan. 576; *State v. Furbeck,* 29 Kan. 532; *State v. Knadler,* 40 Kan. 359, 19 Pac. 923; *State v. Reno,* 41 Kan. 674, 21 Pac. 803; *State v. Daugherty,* 63 Kan. 473, 65 Pac. 695; *State v. Parmenter,* 70 Kan. 513, 79 Pac. 123; *State v. Bassnett,* 80 Kan. 392, 102 Pac. 461; *State v. Stewart,* 85 Kan. 404, 116 Pac. 489; *State v. Mullins,* 95 Kan. 280, 147 Pac. 828; *State v. Kagi,* 105 Kan. 536, 185 Pac. 62; *State v. Welch,* 121 Kan. 369, 247 Pac. 1053; *State v. Robinson,* 125 Kan. 365, 263 Pac. 1081; *State v. Taylor,* 137 Kan. 280, 20 P. 2d 628.

Several of our cases stress the necessity of following these statutes to determine the question of whether the minds of the inhabitants are prejudiced against the defendant. In *City of Emporia v. Volmer,* 12 Kan. 622, Justice Brewer, for the court, had occasion to comment upon our statutes relating to change of venue in criminal cases. In the opinion it was said:

"Sections 174 to 177 (now 62-1318 to 62-1321), inclusive, apply to cases where the application is based upon the prejudice of the inhabitants." Section 178 is quoted without comment. "Those sections referring to a change of venue on account of the prejudice of the inhabitants recite that 'Whenever it shall appear, in the manner hereinafter provided,' etc., and that manner is thereafter provided to be by petition, disclosing the facts, and verified by affidavit." (p. 625.)

In *State v. Furbeck,* 29 Kan. 532 (opinion by Brewer, J.), it was held:

"Before a court is justified in sustaining an application for a change of venue on account of the prejudice of the inhabitants of the county, it must affirmatively appear from the showing that there is such a feeling and prej-

udice pervading the community as will be reasonably certain to prevent a fair and impartial trial."

And this was specifically followed and applied in *State v. Daugherty,* 63 Kan. 473, 65 Pac. 695.

In *State v. Parmenter,* 70 Kan. 513, 79 Pac. 123, it was said:

"It is not enough that prejudice against the defendant exists; but *as the statute provides,* it must exist to such an extent 'that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair trial cannot be had therein.' (Crim. Code, § 174.)" (p. 515.)

In *State v. Bassnett,* 80 Kan. 392, 102 Pac. 461, it was said:

"Section 177 of the criminal code requires that where proof is made by affidavits they must be to the satisfaction of the court, . . ." (p. 395.)

In *State v. Welch,* 121 Kan. 369, 247 Pac. 1053, it was said:

"The statute which permits application to be made for change of venue on the ground the minds of the inhabitants of the county are so prejudiced against defendant that a fair trial cannot be had in the county, requires the petition to set forth the facts on which the application is based. (R. S. 62-1321.) It is not enough that the petition state prejudice exists and a fair trial cannot be had. Specific facts and circumstances showing prejudice must be stated, and not conclusions. (*State v. Knadler,* 40 Kan. 359, 19 Pac. 923.)" (p. 372.)

In *State v. Taylor,* 137 Kan. 280, 20 P. 2d 628, it was said in the opinion:

"The statute provides that a defendant is entitled to a change of venue where the minds of the inhabitants of a county are so prejudiced against him that a fair trial cannot be had, and the question is to be determined as provided in a later section of the criminal code. (R. S. 62-1318.) The procedure and the kind of proof to be applied on an application of that kind is set forth in a later section, namely, R. S. 62-1321 [which is quoted].

"So we see that the decision of the court is to be based upon affidavits and counter affidavits. The proof is to be made under the sanctity of an oath, not upon mere street talk or unsworn statements of unidentified people whose names are not to be revealed to anyone." (p. 284.)

It will be observed that under these statutes it is the defendant only who can make the application for a change of venue on account of the prejudice in the minds of the inhabitants of the county. Counsel for the state have no authority to do so. (*State v. Knapp,* 40 Kan. 148, 19 Pac. 728.)

Following the sections last quoted is section 62-1322, quoted earlier in this opinion. We will now take up the specific questions argued as they relate to this section. The first of these is its con-

stitutionality. As previously noted, it was taken verbatim from the General Statutes of Missouri in force in 1855. We are cited to no case, and our own research has disclosed none, in which this statute was ever used in Missouri, or its constitutionality called into question. However, about that time the state of Arkansas had an identical statute. It also had a section of a bill of rights identical with section 10 of our bill of rights. In *Osborn v. State*, 24 Ark. 629 (1867), it was specifically held that the statute was void. The syllabus reads:

"The 134th *sec., chap.* 52, *Gould's Dig.*, providing that the judge of the circuit court may remove a criminal cause to another county, is in violation of sec. 11, art. 2, of the constitution, which declares that in prosecutions by indictment or presentment, the accused has a right to a speedy public trial by an impartial jury of the county or district in which the crime may have been committed, and is therefore void."

In 1874 that section of the constitution of Arkansas was changed by inserting the following:

"*Provided,* That the venue may be changed to any other county of the judicial district in which the indictment is found, upon the application of the accused, in such manner as now is or may be prescribed by law." (Arkansas Const. of 1874, art. 2, sec. 10.)

Soon after this decision Missouri changed its statute so as to require an application by defendant for a change of venue on the ground the minds of the inhabitants of the county were so prejudiced he could not have a fair trial, and to support the application by the affidavit of defendant and two or more creditable, disinterested citizens of the county. This statute provided reasonable notice in all cases to the prosecuting attorney, and further provided "that if the facts alleged as the ground of the application be within the knowledge of the court or judge, he may order the removal of the cause without any further proof." With some amendments, not pertinent here, this is the present law of Missouri. (See Rev. Stat. Mo. 1939, § 4019.)

The case of *Ex parte Slater*, 72 Mo. 102 (1880), throws some light upon the question before us. There it appears that the constitution of 1865 contained a provision (art. 11, sec. 12) which reads:

"The general assembly shall provide by law for the indictment and trial of persons charged with the commission of any felony, in any county other than that in which the offense was committed, whenever, owing to prejudice or any other cause, an impartial grand or petit jury cannot be empaneled in the county in which such offense is committed."

The constitution of 1875 omitted that section. Both constitutions contained provisions to the effect that one charged with crime should be indicted and had the right to be tried in the county where the offense was committed. While the constitution of 1865 was in effect the legislature had passed an act authorizing an indictment to be found in another county under the circumstances as authorized by the provision of the constitution of 1865, just quoted. After the constitution of 1875 had been adopted Slater was indicted by a grand jury of an adjoining county and brought habeas corpus for his discharge. It was held:

"Under the present constitution (art. 2, § 12) an indictment for felony can be found, as at common law, only in the county in which the offense was committed. Section 1804, Revised Statutes, which undertakes to authorize the grand jury of another county, under certain circumstances, to find the indictment is, therefore, unconstitutional and void." (Syl.)

In *Lewis M. Kirk v. The State*, 41 Tenn. (1 Coldwell), 344 (1860), a statute provided in substance that in selecting a jury in a criminal case, if the court is of the opinion that a fair and impartial jury cannot be had in the county, the court may change the venue to another county. After examining 700 jurors and finding only eight qualified, the court made an order changing the venue to another county. On appeal it was held the statute was in conflict with article 1, section 9, of the constitution, tantamount to section 10 of our bill of rights, and was inoperative and void.

In *Wheeler v. The State*, 24 Wis. 52, a statute provided for a change of venue on the motion of the county attorney. It was held this violated article 1, section 7, of the constitution, tantamount to section 10 of our bill of rights and was void, citing *Osborn v. State*, 24 Ark. 629.

In *State v. Black*, 131 Ore. 218, 282 Pac. 228, defendant, charged with murder, applied for a change of venue, which was denied. A trial resulted in a hung jury. Thereafter the court, on its own motion, changed the venue to another county. It was held the order was void under article 1, section 11 of the state constitution and the sixth amendment to the United States constitution guaranteeing defendant a trial in the county where the offense was committed.

In this state the statute (62-1322) has had but little use. In a general statement concerning our statutes relating to the change of venue it was quoted without comment in *City of Emporia v. Volmer*, 12 Kan. 622. It appears to have been used in combination with an

·oral application of defendant for a change of venue in *State v. Potter*, 16 Kan. 80, where the court held (p. 95) the order made was so irregular it should have been set aside on the motion of the county attorney, or even perhaps upon the motion of the defendant. It appears to have been used by the court in *In re Edwards, Petitioner*, 35 Kan. 99, 10 Pac. 539, but as the court later set aside the ·order on the motion of the county attorney no question involving the statute was presented to this court. It was relied upon as authority for the action of the court in *In re Oberst*, 133 Kan. 364, 299 Pac. 959, where, after three trials of one charged with the murder of ·seven people, an order was made, over defendant's objection, removing the case for trial to another county of the same judicial district. It was held the order was in violation of section 10 of our bill of rights and was void. In the case of *State v. Taylor*, 137 Kan. 280, ·20 P. 2d 628, where defendant had made an application for a change of venue and there were affidavits and counter affidavits upon the hearing of his petition, the court made an independent investigation the result of which he used in denying the petition for the change of ·venue. Counsel for the state sought to justify the order as being based upon the judge's knowledge of facts authorized by section 62-1322. The court declined to take that view, and in the opinion, after quoting the section, it was said:

"That section has application in certain cases, as for instance, where a judge .has been of counsel in the case, or by reason of his relationship to the defendant, or as a material witness in the case, or where all parties are in agreement that such prejudice exists in a county against the defendant that a change ·of the place of trial must be granted as a matter of course." (p. 285.)

It will be noted that the first three things mentioned are grounds ·of the disqualification of a judge, either specifically or of the type referred to in 62-1317. The last one embodies an agreement between court and counsel on both sides, which appears to be foreign to any ·of the statutes. Normally, of course, litigants may agree to many things which might not be enforced upon one of them as a matter of law. The specific question of the constitutional validity of this ·statute has never heretofore been raised or decided by this court. But under our cases just cited in the Oberst case and *State v. Taylor* the section of the statute as it reads is void, for it makes no exceptions or limitations removing the situations held invalid from the ·operation of the statute.

Counsel for defendants cite and rely heavily on *State v. Turling-*

*ton*, 102 Mo. 642, 15 S. W. 141, where one paragraph of the syllabus reads:

"It is discretionary with the court to order a change of venue on its own motion and without an application therefor founded on the proviso in section 4156, Revised Statutes, 1889."

They italicise the words "and without an application therefor." Obviously that language is inept. The proviso referred to in the section cited (Rev. Stat. of Mo., 1939, § 4019), does not authorize a change of venue without application. In fact, there has been no statute of the state of Missouri, so far as we can find, which authorized a change of venue without an application, for more than sixty years. The statute referred to specifically required an application. The proviso simply authorized the court to grant the application without proof required by other portions of the section if the court or judge knew the facts alleged in the application. In that case there had been an application for a change of venue supported by one affidavit when the statute required at least two. In addition to that application there had been a motion filed with the court to dispense with further proof for the reason that the facts alleged in the application were within the knowledge of the trial judge. The court did not think so and denied the application.

Counsel for defendants also rely heavily on the Texas cases, but the Texas constitution (art. 7, § 14, 1845), and the constitution of 1866, provides:

"The legislature shall provide for a change of venue in civil and criminal cases; . . ."

The same provision is in article 12, section 10 of the constitution of 1868, and in article 3, section 45 of the constitution of 1876, which provides:

"The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law, and the legislature shall pass laws for that purpose."

Under the authority of these constitutional provisions the legislature of Texas has enacted statutes construed by the courts of that state to authorize a trial court to change the venue upon the application of the defendant or of the state, or upon the court's own motion when certain things are found to exist. We have no such constitutional provision or such statutes in this state, hence the Texas decisions are not in point.

Counsel for defendants do not contend the statute (62-1322) is

valid if the language used in it is given its ordinary meaning. They do contend, however, that an order made under it is valid if consented to by defendant. They argue that in *In re Oberst,* supra, the court held the order void when objected to by defendant, and that this is tantamount to a holding that it would be valid if agreed to by defendant. That conclusion does not follow. The court dealt with the question before it and did not attempt to do more. Observe, there has been read out of the language of this section the authority of the court to make the order if the defendant objects (*In re Oberst,* supra), and read out of it the authority of the court to ignore the provisions of the statute (62-1318 to 62-1321), which require a petition by defendant and a hearing by the court upon notice in order to change the venue from the county in which the information was filed to another of the same judicial district, or to a county outside of the judicial district, and to make such an order on "street talk." (*State v. Taylor,* 137 Kan. 280, 285, 20 P. 2d 628.) We think the situation presented is much like that which arose in *State, ex rel., v. School Fund Commission,* 152 Kan. 427, 103 P. 2d 801, where the validity of a statute purporting to authorize refunding of bonds before they were due was before the court. It was said:

"If construed as requiring the holder of such bonds to accept such payment, and that holder were a private individual, firm, or corporation, it is conceded the statute would be void as to him, . . . Assuming the statute might be held to be valid when applied only to refunding bonds issued to take up bonds held by another municipality of the state, over which the legislature had complete control, there is no attempt in the statute to segregate the invalid portion of it from that which is valid; neither does it contain a saving clause; hence it cannot stand." (p. 433.)

The court held the statute to be void. We think the same rule applies here and that the statute in question is void.

Counsel for the state contend that, aside from the validity of section 62-1322, the order made by the presiding judge of the district court of Johnson county, January 10, 1942, upon its face, and in view of the existing factual situation, was void, or at least so voidable that it should be set aside upon their motion. They point out that under 62-1323 the order "shall specify the cause of removal," and the only facts set out were:

". . . that, subsequent to the arrest of the defendant herein, there has followed an unusual and very extensive amount of publicity concerning said defendant and the charges filed against him, which publicity appeared in many

issues of the newspapers of said district, and also in the metropolitan newspapers which are extensively distributed and read throughout said district; that in addition thereto, great interest has been shown and a great amount of discussion had concerning said case throughout said district, and opinions have been freely expressed concerning the same; . . ."

They argue these facts are insufficient to have authorized a change of venue if no more had been found upon a hearing of defendants' petition filed and considered as provided by 62-1320, 62-1321, citing: *State v. Bohan*, 15 Kan. 407; *State v. Rhea*, 25 Kan. 576; *State v. Furbeck*, 29 Kan. 532; *State v. Daugherty*, 63 Kan. 473, 65 Pac. 695; *State v. Parmenter*, 70 Kan. 513, 79 Pac. 123; *State v. Bassnett*, 80 Kan. 392, 102 Pac. 461; *State v. Welch*, 121 Kan. 369, 247 Pac. 1053; *State v. Robinson*, 125 Kan. 365, 263 Pac. 1081; *State v. Harris*, 126 Kan. 710, 271 Pac. 316; *State v. Hooper*, 140 Kan. 481, 37 P. 2d 52.

The point is well taken.

The factual situation, as stated by counsel for the state, shown in part by the transcript of the proceeding of January 10, 1942, and in part by other documents before the court, and not controverted, are that in conference between the court and counsel on January 5, when suggestions were made about removing the case to the other county of the tenth judicial district, or to some county adjoining that district, defendants did not consent, but when the court suggested removing the cases to Shawnee county, defendants consented. It is argued this partook of the nature of a bargain; that by withholding or giving their consent defendants could have their cases removed to the county of their choice, and it is suggested, but not attempted to be established here, that defendants had one or more special reasons for wanting the case removed to Shawnee county. Certainly this statute (62-1322) was never intended to permit such a procedure. This court declines to give countenance to it. We conclude the legally inconsequential reasons given for removal, stated in the order, and the circumstances under which it was made, render the order void. Certainly it is so voidable that it should be set aside upon motion of counsel for the state, or of the defendants, or upon the court's own motion.

Counsel for defendants argue the district court of Shawnee county had no power to remand the case to the district court of Johnson county unless its order of January 10, 1942, was void, as distinct from being voidable. Without examining the question carefully, and for the purpose of this case, we shall assume this contention to

be correct. However, every court has the authority, and in fact the duty, of satisfying itself that it has jurisdiction of a case before it proceeds to the trial thereof. The district court of Shawnee county remanded the case for the stated reason that "the order of transfer and change of venue . . . is irregular and not in accordance with the law and confers no jurisdiction upon the district court of Shawnee county." We are not advised whether the judges of the district court of Shawnee county thought 62-1322 was void, or thought the order void on its face because "the cause of removal" (62-1323) was legally insufficient, or because of its irregularity as shown by the transcript which accompanied it. Either of the two reasons first stated, and perhaps the third, justified their order.

Counsel for defendants argue section 10 of our bill of rights was enacted for the benefit of persons charged with crime, and the order of removal of January 10, 1942, is no concern of the state, if defendants consent to it. The argument goes too far. It is true this and other sections of our bill of rights were designed to insure to citizens many rights, of which all too frequently they had been deprived in times past, but it is inaccurate to say the state is not concerned with the trial of a criminal action in its proper jurisdiction and venue. That the state may move to set aside an irregular order for a change of venue was specifically ruled in *State v. Potter*, 16 Kan. 80, 95; in *In re Edwards, Petitioner*, 35 Kan. 99, 103, 10 Pac. 539, the motion of the county to set aside an order of removal was sustained; in *State v. Knapp*, 40 Kan. 148, 19 Pac. 728, the state appealed from an order of the court dismissing a case which had been removed; and since the change of venue may be a wrong to the public (*State v. Stark*, 63 Kan. 529, 66 Pac. 243), the state is always interested in such an order. Indeed, our statutes (62-1318 to 62-1321) authorizing a change of venue on account of prejudice of inhabitants, and providing the procedure therefor, require notice to the county attorney and authorize him to file affidavits in opposition to the petition for the change.

Counsel for defendants argue the order of the district court of Johnson county of January 10 was in all respects regular and in conformity to law. We do not agree. Hereinbefore we have discussed that matter sufficiently. Counsel point out that defendants gave new bonds to appear in Shawnee county, and their former bonds for their appearance in Johnson county were set aside by the court. This was a part of the order for the removal of the cases

which we have held to be invalid. New bonds may be required by the court if that is deemed necessary or prudent.

Counsel for defendants argue that the state has slept on its rights, in that it did not appeal from the order of the district court of Johnson county of January 10, and say that order has become *"res judicata."* The point is not well taken, for the following reasons, at least: The doctrine of *res judicata* is rarely applied in criminal cases, and we think it has no application here; and in any event it would not prevent the state from questioning the order if it is void, or if it is so voidable that it could be set aside on the state's motion and there is still time within the term of court at which it was made to file such a motion.

The mandamus action, No. 35,592, in this caption remains to be treated. The motion for the writ and the answer filed by defendant present the same fundamental legal questions presented and hereinbefore determined in the two groups of appeals. It will not be necessary to rediscuss them.

The motion for the writ also alleges a number of facts which, if established, would tend to show that the defendant is disqualified to sit as the presiding judge in the trial of these four Hedrick cases, and we are asked to hear the evidence and to adjudge defendant to be so disqualified and to appoint some other judge of the district court as judge pro tem to preside at the trial of the cases. The state has filed also a separate certificate, in apparent conformity to G. S. 20-311a, for the appointment of a judge pro tem to hear the cases for the reasons as alleged in the motion for the writ. The answer, verified and filed by the defendant, denies, and perhaps as to some of them explains, all of these allegations upon which plaintiff seeks to have it adjudged that he is disqualified to try the cases. In this respect the pleadings present controverted issues of fact which cannot be determined without the taking of evidence. However, the verified answer filed by defendant contains the following pertinent allegations:

"This respondent states that he has always been and still is of the opinion that no judge of a district court should preside in the trial of a case, or cases, which involve criminal charges against any members of his district court bar, which opinion applies to the situation involved herein, and to the status of this respondent and said defendants Frank D. Hedrick, Sr., and Frank D. Hedrick, Jr., who have been and who now are members of the district court bar of Johnson county, of which court this respondent is the presiding judge."

And the final prayer of the answer reads:

"Therefore, by reason of the foregoing, this respondent, as judge of the district court of Johnson county, Kansas, prays the order and decree of the supreme court of the state of Kansas, designating and appointing some district judge in the state of Kansas, as judge pro tem of Johnson county, Kansas, for the purpose of presiding at the hearings, and the trials and all matters and things relative to said four cases, wherein said Frank D. Hedrick, Sr., and Frank D. Hedrick, Jr., are the defendants, if and when the jurisdiction of said cases, and of said defendants, by the judgment and decree of the supreme court of the state of Kansas, be finally placed in the jurisdiction of the district court of Johnson county, Kansas."

Defendant also filed in this court, in apparent conformity to G. S. 1935, 20-311a, a separate certificate of his disqualification and request for the appointment of a judge pro tem in the event the district court of Johnson county is adjudged to have jurisdiction for the further trial or disposition of the Hedrick cases.

The court is not particularly concerned with whether the defendant is disqualified to act as presiding judge in the trial of the cases mentioned because of the reasons alleged in the motion for the writ and denied in the answer, or for the separate reasons stated by defendant in his answer. If a presiding judge is disqualified to preside over the trial of a case for any reason which causes him to regard himself as disqualified he should, of course, step aside and ask the court to appoint a judge pro tem to preside over the trial.

The order of February 17, 1942, of the judges of the district court of Shawnee county appealed from by the defendants is affirmed. The order of February 21, 1942, of the district court of Johnson county appealed from by the state is reversed, and it is held that the four cases in which the informations were filed against the two Hedricks are pending for trial or other lawful disposition in the district court of Johnson county. Upon the answer and certificate filed by the defendant in case No. 35,592 the court finds and adjudges that the Hon. G. A. Roberds, judge of the district court of the tenth judicial district, is disqualified to sit as the presiding judge in the above mentioned cases, and in due time will appoint a judge pro tem for the purpose of presiding over the trial of such cases.

ALLEN, J., dissents.

HOCH, J., not participating.